1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

MAURICE ANTHONY BROWN,

Plaintiff,

11

v.

12

JACI MICHAELIS, *et al.*,

13

Defendants.

14

CASE NO. 2:22-cv-00828-LK-GJL

REPORT AND RECOMMENDATION

Noting Date: **July 25, 2025**

15    This *pro se* prisoner civil rights action has been referred to United States Magistrate

16 Judge Grady J. Leupold. Dkt. 36. Currently pending before the Court are Cross-Motions for

17 Summary Judgment filed by Plaintiff Maurice Anthony Brown and Defendants Department of

18 Corrections ("DOC"), Cheryl Strange, Robert Jackson, James Key, Dean Mason, Don McIntyre,

19 Jack Richardson, Dan White, and Jaci Michaelis (collectively "Defendants"). Dkts. 112, 120.

20    In their Cross-Motion, Defendants argue they are entitled to summary judgment because

21 Defendant DOC is not a proper defendant under 42 U.S.C. § 1983 and because Plaintiff cannot

22 show personal participation by most, if not all, of the individually named Defendants. Dkt. 112 at

23 11–15. They further argue that Plaintiff received constitutionally adequate and responsive

24 medical care during his incarceration, and that any delays or disagreements in treatment do not

amount to deliberate indifference under the Eighth Amendment. *Id.* at 15–18. Defendants also argue that Plaintiff is unable to adduce evidence showing that any Defendant acted with discriminatory intent in violation of the Equal Protection Clause, nor can he produce evidence showing that any Defendant violated his rights under the Due Process Clause of the Fourteenth Amendment. *Id.* at 18–19. Finally, Defendants make the capstone argument that all individually named Defendants are entitled to qualified immunity. *Id.* at 20–21.

On the other hand, Plaintiff argues he is entitled to summary judgment because Defendants failed to provide prompt and adequate medical care despite his repeated requests to be treated for various medical concerns. Dkt. 120 at 1–5. Plaintiff contends that these failures, for which supervisory officials were allegedly complicit, resulted in multiple constitutional violations. *Id.* at 5–9, 11–13.

Upon review of the parties' briefing and the relevant evidentiary record, the undersigned concludes that no genuine issue of material fact exists as to Defendants' liability on any claim for relief asserted by Plaintiff. Accordingly, the Court **RECOMMENDS** that Defendants' Cross-Motion for Summary Judgment (Dkt. 112) be **GRANTED** and Plaintiff's Cross-Motion for Summary Judgment (Dkt. 120) be **DENIED**.

The following non-dispositive Motions and Requests are also pending before the Court:

- Defendants' Objections/Requests to Strike Evidence (Dkt. 121 at 8–9; Dkt. 128 at 2–5);

- Plaintiff's Motion to Strike Summary Judgment Statements regarding Dr. Jeong H. Yoon (Dkt. 124);

- Plaintiff's Motion for Leave to Amend his Second Amended Complaint (Dkt. 125);

- Plaintiff's Request for Court-Ordered Mediation (Dkt. 132 at 1, 5); and

- Defendants' Motion to Strike Plaintiff's Supplemental Response in opposition to Cross-Motion for Summary Judgment (Dkt. 133).

For the reasons set forth below, Defendants' Objections/Requests to Strike Evidence (Dkt. 121 at 8–9; Dkt. 128 at 2–5) are **DENIED**, Plaintiff's Motion to Strike Summary Judgment Statements (Dkt. 124) is **DENIED**, Plaintiff's Motion for Leave to Amend (Dkt. 125) is **DENIED**, Plaintiff's Request for Court-Ordered Mediation (Dkt. 132 at 1, 5) is **DENIED**, and Defendants' Motion to Strike Plaintiff's Supplemental Response (Dkt. 133) is **GRANTED**.

## I.    PROCEDURAL BACKGROUND

This matter has a lengthy and complex procedural history well-known to the parties, which the Court will summarize only in relevant part. Plaintiff initiated this prisoner civil rights action on June 14, 2022. Dkt. 1. At that time, Plaintiff was serving a state-court sentence of confinement at Airway Heights Correctional Center ("AHCC"), which is a DOC facility. *Id.* Although Plaintiff is no longer incarcerated, he continues to litigate claims that arose during his most recent confinement in DOC facilities extending from July 2021 until his release in November 2022. *See* Dkt. 88-1.

The operative complaint in this matter is Plaintiff's Second Amended Complaint, which was filed after Plaintiff was released from DOC custody. Dkt. 52. Plaintiff asserts the following claims against Defendants in his Second Amended Complaint: (1) failure to provide adequate medical care in violation of the Eighth Amendment to the United States Constitution (Count I), (2) unfairness in processing medical grievances in violation of the Equal Protection Clause of the Fourteenth Amendment (Count II), and (3) denying, neglecting, and ignoring medical grievances in violation of the Due Process Clause of the Fourteenth Amendment (Count III). *Id.* at 4–8.

Following the close of discovery but before the deadline to file dispositive motions elapsed, Defendants moved for summary judgment based solely on Plaintiff's alleged failure to exhaust available administrative remedies on all claims asserted in his Second Amended

Complaint. Dkt. 87. The Court stayed the deadline to file other dispositive motions until Defendants' Motion on exhaustion grounds was resolved. Dkt. 93.

On January 7, 2025, the Court recommended Defendants' Motion for Summary Judgment on exhaustion grounds (Dkt. 87) be denied because Plaintiff was not a confined prisoner at the time he filed his Second Amended Complaint and was thus not required to exhaust administrative remedies. Dkt. 100 at 4–6, 8. The Court also noted that, in his response to Defendants' Motion and other filings, Plaintiff repeatedly referenced claims against individuals who were not parties in this suit. *Id.* at 6–8. Therefore, to the extent Plaintiff sought to amend his pleadings to include additional parties in response to summary judgment, the Court concluded this request should be denied, observing that Plaintiff must "move separately and demonstrate good cause for an eleventh-hour amendment to his pleadings." *Id.* at 7 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (to amend at a late stage in litigation, a plaintiff must show good cause for the amendment, demonstrate their diligence in seeking leave to amend, and overcome any prejudice the amendment would cause to the opposing party)).

After the Court issued its Report and Recommendation, Plaintiff filed a "Partial Opposition to Summary Judgment," Dkt. 101, which District Judge Lauren King treated as timely objections to the denial of Plaintiff's request to add new defendants in response to summary judgment. Dkt. 110 at 2–3. No objections were filed by Defendants. *See docket.* On March 24, 2025, the Judge King adopted and affirmed the Report and Recommendation in full, overruling Plaintiff's objections and denying Defendants' Motion for Summary Judgment on exhaustion grounds. *Id.* Shortly thereafter, the Court lifted the stay and reinstated the dispositive motion deadline. Dkt. 111.

1  ***Cross-Motions for Summary Judgment***. On April 28, 2025, both sides filed timely

2  Cross-Motions for Summary Judgment. Dkt. 112 (Defendants' Cross-Motion); Dkt. 120

3  (Plaintiff's Cross-Motion). Defendants included citations to previously submitted evidence

4  within their Cross-Motion and filed supporting Declarations and Exhibits by Defendants

5  McIntyre, White, Key, Jackson, Mason, Richardson, and Michaelis. Dkt. 112 (citing Dkt. 88-1

6  (Plaintiff's DOC Movement History) and Dkt. 89 (Nonparty Carol Smith Declaration and

7  Exhibits)); Dkts. 113 through 119 (Defendants' Declarations and Exhibits). Plaintiff did not cite

8  or submit any evidence with his Cross-Motion, stating instead that his summary judgment

9  response would contain all supporting evidence.[1] Dkt. 120.

10      The parties next filed Responses in opposition to the Cross-Motions for Summary

11  Judgment. Dkt. 121 (Defendants' Response to Plaintiff's Motion); Dkt. 122 (Plaintiff's Response

12  in opposition to Defendants' Motion). Defendants did not submit any additional evidence with

13  their Response. Dkt. 122. In contrast, Plaintiff attached 139 pages of unlabeled exhibits to his

14  Response, comprised of a letter from the Office of Corrections Ombuds ("OCO"), a coversheet

15  from Defendants' first set of interrogatory responses, medical records, inmate grievances, and

16  written requests, or "kites," sent to health services. *Id.* at 8–147. All medical records, grievances,

17  and "kites" attached to Plaintiff's Response are copies of Defense Exhibits with handwritten

18  annotations ostensibly added by Plaintiff. *Id.* at 10–147 (resubmitting Exhibits filed in support of

19  Dkt. 113 (McIntyre Declaration) and Dkt. 119 (Michaelis Declaration)). In addition, Plaintiff

20

21  _____

[1] Plaintiff also states that his claims are supported by "documentation previously provided to the courts," but does
22  not include any docket citation or provide sufficient information to appraise the Court of the particular evidence he
relies upon to support the factual assertions made in his Cross-Motion. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th
23  Cir. 1996) (a party must identify summary judgment evidence with "reasonable particularity," as it is not the court's
"task…to scour the record in search of a genuine issue of triable fact") (citations omitted); *see also Carmen v. San
Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("If the district court, or later [the circuit] court,
24  searches the whole record, in practical effect, the court becomes the lawyer for the [litigant], performing the
lawyer's duty of setting forth specific facts showing that there is a genuine issue for trial.").

1   filed his own sworn Declaration and a sworn Declaration from the mother of his children, Isha

2   Alexander, who is not a party to this action. Dkt. 123 (Alexander Declaration); Dkt. 127

3   (Plaintiff Declaration).

4        The parties filed timely Replies in support of the Cross-Motions for Summary Judgment

5   on May 27, 2025. Dkt. 128 (Defendants' Reply in support of their Motion); Dkt. 129 (Plaintiff's

6   Reply in support of his Motion). Defendants, once again, did not submit additional evidence, and

7   Plaintiff submitted the following additional evidence in support of his Reply: (1) medical records

8   dated several years after his release from DOC custody, (2) the results of an OCO investigation

9   into the sufficiency of cancer diagnosis and treatment for eleven unnamed DOC inmates, and (3)

10  a sworn Declaration from Nonparty C Bey El, discussing Plaintiff's post-release medical care for

11  kidney cancer. Dkt. 129 at 5–32.

12       ***Motions to Strike Summary Judgment Arguments and Evidence.*** Both sides objected

13  and requested/moved to strike arguments and evidence submitted in support of the Cross-

14  Motions for Summary Judgment. In particular, Plaintiff moved to strike Defendants' arguments

15  and factual positions concerning the medical findings of Dr. Yoon, who is not a party to this

16  action. Dkt. 124. For their part, Defendants objected and requested to strike the sworn

17  Declarations from Plaintiff and Nonparty Alexander, Plaintiff's handwritten annotations on the

18  resubmitted Defense Exhibits, the OCO letter, and arguments and factual positions in Plaintiff's

19  Cross-Motion for Summary Judgment and Response. Dkt. 121 at 8–9; Dkt. 128 at 2–5.

20       ***Plaintiff's Supplemental Response and Request for Mediation***. Eight days after the

21  summary judgment reply deadline expired and sixteen days after the summary judgment

22  response deadline expired, Plaintiff filed a combined Supplemental Response and Request for

23  Mediation. Dkt. 132 (filed Jun. 4, 2025); Local Rules W.D. Wash., LCR 7(d)(4) ("Any

24  opposition papers shall be filed and received…*no later than 21 days* after the filing date of the

motion" and reply papers must be filed "*no later than 28 days* after the filing date of the motion") (emphasis added). Shortly thereafter, Defendants moved to strike Plaintiff's Supplemental Response, but did not address his request for mediation at that time. Dkt. 133.

The Court then directed Defendants to respond to Plaintiff's mediation request and permitted Plaintiff to file a reply in support. Dkt. 134. In their Mediation Response filed on June 20, 2025, Defendants state that they do not wish to participate in mediation and, instead, prefer that the case proceed to trial if not resolved at summary judgment. Dkt. 136. Plaintiff filed an untimely Reply in support of his mediation request, making predominately the same arguments made in his initial filing. Dkt. 137.

*Motion for Leave to Amend Second Amended Complaint.* Finally, while briefing on the Cross-Motions for Summary Judgment was ongoing, Plaintiff filed a Motion for Leave to Amend his pleadings for a third time, which Defendants oppose. Dkt. 125 (Motion to Amend, filed May 19, 2025); Dkt. 130 (Response in Opposition to Motion to Amend).

The time to submit briefing on the above matters has concluded, and all pending Motions and Requests are now ripe for consideration by the Court.

## II.     SUMMARY OF ESSENTIAL FACTS

Plaintiff challenges various conditions of his confinement in DOC custody from July 2021 to November 2022. Dkt. 52. During that time, Plaintiff was housed at AHCC, Washington Corrections Center ("WCC"), and Monroe Correctional Center ("MCC"). Dkt. 88-1 (DOC Movement History); *see also* Dkt. 112 at 3; Dkt. 120 at 2. In particular, Plaintiff challenges the (1) manner in which his medical grievances were processed, (2) the sufficiency of medical care he received for diabetes and reports of kidney pain (which, according to Plaintiff, preceded his

1  eventual diagnosis for kidney cancer[2]), and delays in receiving certain medications and medical

2  devices, such as blood pressure medication and a continuous positive airway pressure machine

3  ("CPAP machine"). *Id.* at 4–8.

4      The parties agree that Plaintiff submitted a high volume of grievances through the DOC's

5  Inmate Grievance/Resolution Request Program ("the Resolution Request Program" or "the

6  Program"). Dkt. 89-5; *see also* Dkt. 112 at 3; Dkt. 120 at 3. Dkt. 89 at 5 (Carol Smith

7  Declaration); Dkt. 89-3 (Resolution Request Log); *see also* Dkt. 112 at 3; Dkt. 120 at 3. The

8  Resolution Request Program is the DOC's internal grievance system that provides inmates an

9  avenue to resolve concerns related to their incarceration, including department policies, staff

10 conduct, living conditions, and health services. Dkt. 89 at 2–3 (Carol Smith Declaration). Upon

11 entry, DOC inmates are informed about the Program and directed to the Resolution Program

12 Manual, available in the prison library. *Id.* (citing Dkt. 89-1 (DOC Resolution Program Manual,

13 revised March 2021) and Dkt. 89-2 (DOC Resolution Program Manual, revised October 2022)).

14 The Program restricts inmates from filing untimely, simultaneous/duplicative, and excessive

15 grievances; inmates who violate these restrictions may have their access to the Program

16 temporarily suspended and their filings rejected. *Id.* at 3 (citing Dkt. 89-1 at 9 (DOC Resolution

17 Program Manual, revised March 2021) and Dkt. 89-2 at 9 (DOC Resolution Program Manual,

18 revised October 2022)).

19     The Program consists of four levels of review: "Level 0" involves informal attempts to

20 resolve concerns; "Level I" provides the first formal written response; "Level II" provides

21 review by higher level facility officials or health administrators; and "Level III" is the final

22

23 [2] As discussed *infra* Part VII(C)(1)(b)(ii) (pp. 34–35), whether and/or when Plaintiff was diagnosed with kidney cancer is not a material issue in this case where other essential elements of his § 1983 claims are not met. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

24

1   review conducted at DOC headquarters, beyond which no further appeal is permitted. *Id.* at 3–4

2   (citing Dkt. 89-1 at 5–6, 14–15 (DOC Resolution Program Manual, revised March 2021) and

3   Dkt. 89-2 at 5–6, 14–15 (DOC Resolution Program Manual, revised October 2022)). Grievances

4   must be filed within twenty working days of an incident, and appeals to Levels II and III must be

5   submitted within five working days of the prior level's response. *Id.* at 4 (citing Dkt. 89-1 at 6

6   (DOC Resolution Program Manual, revised March 2021) and Dkt. 89-2 at 6 (DOC Resolution

7   Program Manual, revised October 2022)). The entire process may be completed within ninety

8   working days, but delays can occur in processing unclear grievances and those involving

9   complex issues. Dkt. 89-1 at 6 (DOC Resolution Program Manual, revised March 2021); Dkt.

10  89-2 at 6 (DOC Resolution Program Manual, revised October 2022).

11          Plaintiff submitted 45 grievances and additional "kites" regarding medical and non-

12  medical issues through the Program. Dkt. 89 at 5 (Carol Smith Declaration); Dkt. 89-3

13  (Resolution Request Log); *see also* Dkt. 112 at 3; Dkt. 120 at 3. A number of these grievances

14  were not accepted for review, and Defendants contend this was due to the Program's restrictions

15  on simultaneous and/or duplicative grievances. *See* Dkt. 89-1 at 26 (DOC Resolution Program

16  Manual, revised March 2021); Dkt. 89-2 at 26 (DOC Resolution Program Manual, revised

17  October 2022). Although Plaintiff has presented no summary judgment briefing on the matter,

18  Defendants concede that Defendants McIntyre and Michaelis processed some of the medical

19  grievances and appeals that Plaintiff filed while housed at AHCC. Dkt. 113 (McIntyre

20  Declaration); Dkt. 119 (Michaelis Declaration); *see also* Dkt. 112 at 3, 6–9.

21          Finally, it is undisputed that Plaintiff was provided considerable medical care while in

22  DOC custody, including at least eighty-four primary medical visits with DOC providers and nine

23  referrals for specialty consultations with outside providers. Dkt. 113 at 2–3 (McIntyre

24  Declaration); Dkt. 113-5 (Medical Records); Dkt. 113-6 (Medical Encounter Log); Dkt. 127

1    (Plaintiff's Declaration); *see also* Dkt. 112 at 3; Dkt. 120 (disputing adequacy rather than amount

2    of medical care). Regarding particular medical issues raised in the Second Amended Complaint,

3    Defendants concede that Plaintiff experienced "brief delays" in receiving a CPAP machine and

4    certain medications while in DOC custody, but they maintain that those delays were not harmful

5    to Plaintiff. Dkt. 112 at 2. And, while the parties dispute whether Plaintiff had access to adequate

6    diabetes treatment while in DOC custody, it is undisputed that Plaintiff periodically refused

7    insulin to treat this chronic condition. Dkt. 112 at 8; Dkt. 122 at 3–4 (arguing he refused insulin

8    because he was not given food upon request following medication ingestion).

## III.    MOTION FOR LEAVE TO AMEND

10        The Court first resolves Plaintiff's Motion for Leave to Amend his pleadings, which—if

11    granted—would render moot the parties' requests for summary judgment on the claims alleged

12    in the Second Amended Complaint. *C.f. Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir.

13    2010) ("As a general rule, when a plaintiff files an amended complaint, the amended complaint

14    supersedes the original, the latter being treated thereafter as non-existent.") (cleaned up). In his

15    Motion, Plaintiff seeks leave to file a third amended complaint so that he may include additional

16    defendants not properly named in the Second Amended Complaint. Dkt. 125.

17        The time for Plaintiff to amend his pleadings as a matter of course expired *over two years*

18    *ago*, Plaintiff has not obtained Defendants' written consent to amend, and he has not attached a

19    proposed third amended complaint as an exhibit to his Motion as required by Rule 15(a) of this

20    Court's Local Rules. *See* Fed. R. Civ. P. 15(a)(1)–(2). Given this Motion's excessive

21    delinquency and Plaintiff's noncompliance with local filing requirements, the Court will not

22    grant leave to amend.

23        Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure,

24        (1) ***Amending as a Matter of Course***

A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) *Other Amendments*

In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

*Id.* Defendants filed their first responsive pleading in this case on December 14, 2022. Dkt. 25. Thus, the time for Plaintiff to amend his pleadings as a matter of course under Rule 15(a)(1) has long since passed. Further, Defendants oppose Plaintiff's request to amend and have not provided written consent allowing him to amend. Dkt. 130. As such, the only avenue available for Plaintiff to file a third amendment to his pleadings is to obtain leave of court. *See* Fed. R. Civ. P. 15(a)(2).

Ordinarily, the Court must grant leave to amend, which is "freely given when justice so requires," but the Court should not exercise this authority when such leave would cause or excuse "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182 (1962).

In addition, under this Court's Local Rules, a party moving for leave to amend "must attach a copy of the proposed amended pleading as an exhibit to the motion," and the proposed amended pleading "must not incorporate by reference any part of the preceding pleading." Local Rules W.D. Wash., LCR 15(a). Plaintiff has previously been advised of this requirement, and his prior request for leave to amend was denied for failure to adhere to

Local Rule 15(a). *See* Dkt. 35. Even so, Plaintiff has not attached a proposed third amended complaint as an exhibit to his Motion. *See* Dkt. 125.

While the Court may overlook a *pro se* litigant's failure to *strictly* comply with procedural requirements and grant leave to amend *sua sponte*, justice does not demand the exercise of such discretion in every case, including the case at bar. *See Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (noting that courts should afford *pro se* litigants leniency when evaluating compliance with the technical rules of procedure); *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), *as amended* (May 22, 1992) (affirming district court's decision to strike deficient amended pleading and dismiss § 1983 action where *pro se* plaintiff was given notice and sufficient opportunity to cure deficiencies). Granting leave to amend in this case would create an exception to the applicable rules that would run the risk of swallowing them whole.

The requirement for Plaintiff to submit a proposed amended complaint is not simply a procedural hurdle for him to clear—rather, Local Rule 15(a) serves two critical functions. First, the submission of a proposed amended pleading is essential for Plaintiff to demonstrate that leave should not be denied on futility grounds or based on his repeated failure to cure his pleading's deficiencies. *See Foman,* 371 U.S. at 182. Second, a proposed amended pleading provides notice and an opportunity for Defendants to identify any undue prejudice that the amendment could cause. *Id.* Absent disclosure of the actual amended pleading Plaintiff wishes to file, Defendants are left without a full and fair opportunity to screen the pleadings for prejudice and oppose leave to amend on that and other grounds.

This second function is of particular importance given the late hour of Plaintiff's request to amend, which was made almost three years after he initiated this case and more than two weeks after the parties filed their Cross-Motions for Summary Judgment. *See*

*Johnson*, 975 F.2d at 609 (discussing requirements to obtain leave to amend at a late stage in litigation). Furthermore, Plaintiff's claim that he only wishes to add new defendants to this suit and will not change his "factual allegations, legal claims, or causes of action" are insufficient to serve either function described above. Dkt. 125 at 1. Indeed, Plaintiff's Cross-Motion requests summary judgment on claims not alleged, *see infra* Part VII.C (p. 20), which casts doubt on whether he has an accurate recollection of the claims and allegations in his Second Amended Complaint.

Accordingly, Plaintiff's Motion for Leave to Amend his Second Amended Complaint (Dkt. 125) is **DENIED** for failure to comply with Local Rule 15(a).

### IV.    MOTION TO STRIKE SUPPLEMENTAL RESPONSE

Next, Defendants move to strike Plaintiff's Supplemental Response in opposition to their Motion for Summary Judgment (Dkt. 132), which was filed more than two weeks after the parties' summary judgment response deadline expired. Dkt. 133. Because Plaintiff filed his untimely Supplemental Response without leave of court and without justification for his delay, it is properly stricken from the record in this case and will not be considered in resolving the Cross-Motions for Summary Judgment.

Although the Court affords *pro se* litigants a measure of leniency in adhering to procedural rules, this does not mean that procedural rules may be ignored entirely. *See Draper*, 792 F.2d at 924; *Ferdik*, 963 F.2d at 1261. Procedural rules are fundamental to ensuring that the judicial process proceeds in an orderly and equitable manner. *See generally* Fed. R. Civ. P. 1 ("[The Federal Rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). Neither the leniency owed to *pro se* litigants nor the interest of

justice demand that the Court overlook Plaintiff's failure to adhere to procedural requirements in this instance.

To begin, Plaintiff has been repeatedly advised of the Local Rules governing the briefing schedules for dispositive motions. Dkts. 65, 111; Local Rules W.D. Wash., LCR 7(d)(4) ("Any opposition papers shall be filed and received…no later than 21 days after the filing date of the motion."). The Court has also notified Plaintiff that any submissions mailed to the Court will be "deemed 'filed' on the day they are stamped as received by the Clerk of Court." Dkt. 91 at 2 n.1 (citing *Garcia v. City of Santa Clara*, No. 10-cv-2424-SI-PR, 2012 WL 506320, at *3 (N.D. Cal. Feb. 15, 2012)). Plaintiff's awareness and ability to comply with filing deadlines is further demonstrated by his timely submissions of other summary judgment materials. *See, e.g.*, Dkt. 120, 122, 129. Nevertheless, Plaintiff did not seek leave of court to file his untimely Supplemental Response. Dkt. 132.

Additionally, Plaintiff has not shown, and the Court does not find, that his Supplemental Response is necessary to ensure he receives a full and fair opportunity to defend his claims at summary judgment. Plaintiff had the opportunity to—and did—submit briefing in support of his position, and his Supplemental Response does not raise any issues, arguments, or evidence that were not, or could not have been, presented in his prior submissions. *Compare* Dkt. 132 *with* Dkts. 120, 122, 129.

Accordingly, Defendants' Motion to Strike (Dkt. 133) is **GRANTED** and Plaintiff's Supplemental Response (Dkt. 132) is hereby **STRICKEN** from the record in this case. The decision to strike Plaintiff's Supplemental Response does not impact the Court's consideration of Plaintiff's Request for Court-Ordered Mediation made in that same docket entry. Dkt. 132 at 1, 5.

1    **V.    OBJECTIONS AND REQUESTS TO STRIKE ARGUMENTS AND EVIDENCE**

2    Next, both parties seek to strike various arguments and evidence presented in support of

3    the Cross-Motions for Summary Judgment. In particular, Plaintiff moved to strike certain

4    arguments and factual positions in Defendants' Cross-Motion for Summary Judgment regarding

5    the medical findings of Dr. Yoon.[3] Dkt. 124. For their part, Defendants objected and requested to

6    strike the sworn Declarations from Plaintiff and Nonparty Alexander, Plaintiff's handwritten

7    annotations on resubmitted Defense Exhibits, the OCO letter, and arguments and factual

8    positions in Plaintiff's Cross-Motion for Summary Judgment and in his Response. Dkt. 121 at 8–

9    9; Dkt. 128 at 2–5.

10    In ruling on motions for summary judgment, the Court may only consider evidence

11    likely to be admissible at trial. *Harlow v. Chaffey Cmty. Coll. Dist.*, No. 21-55349, 2022 WL

12    4077103, at *1 (9th Cir. Sept. 6, 2022) (addressing impact of 2010 amendments to Fed. R.

13    Civ. P. 56(c)(2) on evidentiary standards outlined in prior cases); *see also* Fed. R.

14    56(c)(2), advisory comm. note to 2010 Amendments (the proponent of summary judgment

15    evidence must show either "the material is admissible as presented or explain the admissible

16    form that is anticipated" at trial). However, at the summary judgment stage, the Court is

17    focused on the admissibility of the content, rather than the form, of the evidence. *Fraser v.*

18    *Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). Thus, rather than striking inadmissible

19

20    _____

21    [3] The Court observes, however, that Plaintiff's request to strike is borne out of a misinterpretation of Defendants'
position. Based on the Court's review of the parties' submissions, they agree that Dr. Yoon made no explicit finding
in favor of or against a kidney cancer diagnosis when assessing Plaintiff at a medical appointment. Dkt. 112 at 17

22    (stating Dr. Yoon "made no finding of cancer"); Dkt. 127 at 2 (Plaintiff's Declaration; stating in double negative
that "Dr. Yoon did not tell me verbally that I did NOT have cancer"). Indeed, the factual position taken by both
parties—that Dr. Yoon did not endorse or exclude a kidney cancer diagnosis—is consistent with the evidentiary

23    record before the Court. Plaintiff's medical records reflect that he and Dr. Yoon discussed management options for
his "right renal mass" (*i.e.*, the lesion identified on Plaintiff's right kidney), including a "CT-guided percutaneous
renal biopsy" that could identify but not "fully exclude the possibility of malignancy." Dkt. 113-5 at 268 (Medical

24    Records).

evidence at summary judgment, the Court may disregard inadmissible content and consider only statements that meet the requirements of Rule 56. *See also infra* <u>Part</u> VII.A (pp. 17–19).

"To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001). Rule 56 requires the content of declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible in evidence, and must show the declarant or affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). On the other hand, objections and requests to strike the content of evidence because it is irrelevant, speculative, argumentative, vague, ambiguous, or constitutes an improper legal conclusion are duplicative of the summary judgment standard itself. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006). The same is true of objections and requests to strike an opposing party's arguments and factual positions, which do not function as evidence under Rule 56. *Brit. Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("Legal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion.").

Here, the parties' objections and requests to strike arguments, factual positions, and the content of evidence are duplicative of the summary judgment standard. As such, the Court **DECLINES** to strike the challenged materials but will only consider materials (or portions of materials) that meet the requirements of Federal Rule of Civil Procedure 56. Accordingly, Defendants' Objections/Requests to Strike Evidence (Dkt. 121 at 8–9; Dkt. 128 at 2–5) and Plaintiff's Motion to Strike Summary Judgment Statements (Dkt. 124) are **DENIED**.

## VI.      REQUEST FOR COURT-ORDERED MEDIATION

The final non-dispositive matter before the Court is Plaintiff's Request for Court-Ordered Mediation. Dkt. 132 at 1, 5.  In support of his mediation request, Plaintiff cites health concerns and difficulty in continuing to litigate this case. *Id.*; *see also* Dkt. 137. Defendants oppose Plaintiff's request for mediation, stating their preference to proceed to trial if this matter is not resolved at summary judgment. Dkt. 136.

Under this Court's Local Rules, participation in alternative dispute resolution is generally voluntary unless otherwise ordered by the Court. *See* Local Rules, W.D. Wash. LCR 39(a)(1). Although the Court may order mediation at any stage, such a referral must be appropriate under the circumstances and likely to aid resolution of the case. Having reviewed the record and the parties' respective positions at summary judgment, the Court finds that the parties are at an impasse and that mediation would not be beneficial in this case.

Accordingly, Plaintiff's Request for Court-Ordered Mediation (Dkt. 132 at 1, 5) is **DENIED**.

## VII.      CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.      Summary Judgment Standard

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The materiality of a given fact is determined by the essential elements of the substantive claim for which it lends proof. *Anderson*, 477 U.S. at 248. Only factual disputes that affect the outcome of the suit under the governing law will be considered. *Id.*

The central issue at the summary judgment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

1   party must prevail as a matter of law." *Id.* at 251–52. If the moving party has not met its burden

2   of showing there are no genuine disputes of material fact, summary judgment will be denied

3   regardless of whether the motion is opposed. *See Henry v. Gill Inds.*, 983 F.2d 943, 950 (9th Cir.

4   1993) ("Summary judgment may be resisted and must be denied on no other grounds than that

5   the movant has failed to meet its burden of demonstrating the absence of triable issues."). On the

6   other hand, where there is a complete failure of proof concerning an essential element of the

7   nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled

8   to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

9           Mere disagreement or bald assertions stating a genuine issue of material fact exists does

10  not preclude summary judgment. *California Architectural Bldg. Prod., Inc. v. Franciscan*

11  *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Allegations based solely on the plaintiff's

12  belief are insufficient to oppose summary judgment, as are unsupported conjecture and

13  conclusory statements. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir.

14  2003). In other words, the purpose of summary judgment "is not to replace conclusory

15  allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v.*

16  *National Wildlife Federation*, 497 U.S. 871, 888 (1990).

17          When parties file cross-motions for summary judgment, as the parties have done here, each

18  motion "must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v.*

19  *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Courts must review the evidence submitted in

20  support of each cross-motion. *Id.*; *see also Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532

21  (9th Cir. 2011) ("the court must consider each party's evidence, regardless under which motion

22  the evidence is offered"). And, although the parties may each assert there are no uncontested

23  issues of material fact, courts must determine whether disputed issues of material fact are present.

24

1   *Fair Housing Council of Riverside County,* 249 F.3d at 1136; *Osborn v. Butler*, 712 F. Supp. 2d

2   1134, 1148 (D. Idaho 2010).

3   **B.    Section 1983 Standard**

4          In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (1) the

5   conduct complained of was committed by a person acting under color of state law and (2) the

6   conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of

7   the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds,*

8   *Daniels v. Williams*, 474 U.S. 327 (1986). "The inquiry into causation must be individualized and

9   focus on the duties and responsibilities of each individual defendant whose acts or omissions are

10  alleged to have caused a constitutional deprivation." *See Leer v. Murphy*, 844 F.2d 628, 633 (9th

11  Cir. 1988). Thus, the causation requirement of § 1983 is satisfied only if a plaintiff demonstrates

12  that a defendant did an affirmative act, participated in another's affirmative act, or omitted to

13  perform an act which he or she was legally required to do that caused the deprivation complained

14  of. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

15  **C.    Discussion**

16         In their Cross-Motion, Defendants argue they are entitled to summary judgment

17  because Plaintiff cannot demonstrate personal participation by most or all of the individually

18  named Defendants. Dkt. 112 at 11–15. They further argue that that any delays in treatment

19  Plaintiff experienced are not attributable to any Defendant and, in any case, do not amount to

20  deliberate indifference under the Eighth Amendment as Plaintiff received constitutionally

21  adequate and responsive medical care while incarcerated. *Id.* at 15–18. Defendants also argue

22  that Plaintiff is unable to adduce evidence showing that any Defendant violated his rights

23  under the Fourteenth Amendment. *Id.* at 18–19. With respect to the individually named

24  Defendants only, Defendants argue summary judgment is warranted on qualified immunity

grounds. *Id.* at 20–21. Finally, Defendants argue summary judgment should be awarded in favor of Defendant DOC because it is not a "person" capable of being sued under § 1983. *Id.* at 11.

In his Cross-Motion, Plaintiff argues he is entitled to summary judgment because unspecified "Defendants" failed to provide prompt and adequate medical care despite his repeated "kites" and grievances requesting treatment. Dkt. 120 at 1–6. Plaintiff contends that these failures, for which "supervisors" were allegedly complicit, entitle him to relief under the Eighth and Fourteenth Amendments. *Id.* Plaintiff also argues he is entitled to relief for alleged violations of his Fourth, Fifth, and Thirteenth Amendment rights. Dkt. 120 at 2. However, no such claims are pled in his Second Amended Complaint,[4] which alleges only that Plaintiff suffered violations of his rights under the Eighth Amendment (Count I), under the Equal Protection Clause (Count II) and the Due Process Clause (Count III) of the Fourteenth Amendment. *See* Dkt. 52 at 4–8. Thus, in the discussion below, the Court only considers Plaintiff's requests for relief on claims properly asserted in his Second Amended Complaint.

1. <u>Defendants Jaci Michaelis and Don McIntyre</u>

Defendants first argue that Defendants Michaelis and McIntyre, though involved in processing and investigating some of Plaintiff's medical grievances, are nonetheless entitled to summary judgment on all Counts because neither Defendant engaged in conduct resulting in a violation of Plaintiff's constitutional rights. Dkt. 112 at 6–9, 11–13, 14–18. In his Cross-Motion and subsequent briefing, Plaintiff generally asserts that he suffered constitutional harm due to

---

[4] To the extent Plaintiff references "Additional Claims/Grounds" in attachments to his Second Amended Complaint, *see* Dkt. 52 at 12–21, such references are unclear, convoluted, and indirect; therefore, they do not comply with the pleading requirements in Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a) and (d) (pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and each claim must be supported by allegations that are "simple, concise, and direct").

unresponsiveness to his grievances and failure to provide adequate medical care, but he fails to present specific arguments for why he is entitled to summary judgment on any claim against Defendants Michaelis and McIntyre. *See* Dkt. 120; Dkt. 122; Dkt. 129.

a.    *Evidence*

The following is a summary of admissible evidence relevant to Plaintiff's claims against Defendants Michaelis and McIntyre, which draws primarily from the sworn Declarations and supporting Exhibits from both Defendants and from Nonparty Carol Smith, the Manager of DOC's Resolution Request Program. *See* Dkts. 113, 113-1 through 113-6 (McIntyre Declaration and Exhibits); Dkts. 119, 119-1 through 119-4 (Michaelis Declaration and Exhibits); Dkts. 89, 89-1 through 89-4 (Smith Declaration and Exhibits).

Plaintiff's evidentiary submissions pertaining to Defendants Michaelis and McIntyre are limited to copies of Exhibits already submitted by Defendants with additional handwritten annotations ostensibly made by Plaintiff. Dkt. 122 at 10–147 (resubmitting Exhibits filed in support of Dkt. 113 (McIntyre Declaration) and Dkt. 119 (Michaelis Declaration)). Because these additional annotations are speculative, argumentative, and lack foundation establishing personal knowledge, the Court cites only to the original evidentiary submissions by Defendants. *See* Fed. R. Evid. 602 (Need for Personal Knowledge); *see also Mickelsen v. Albertson's, Inc.*, 226 F. Supp. 2d 1238, 1242 (D. Idaho 2002) (declining to consider evidence that was conclusory, speculative, and lacked foundation establishing personal knowledge at summary judgment).

Further, because the following summary includes discussion of Plaintiff's grievances, the Court notes that, absent additional evidence affirming the truth of the matters stated therein, "grievances are only evidence that an inmate submitted complaints and of what he stated in them; they are not evidence of what actually occurred." *Saddiq v. Trinity Servs. Grp.,* 198 F.

Supp. 3d 1051, 1069 (D. Ariz. 2016), *aff'd sub nom. Saddiq v. Ryan*, 703 F. App'x 570 (9th Cir. 2017).

      (i)  *Overview of Defendant Michaelis' duties and personal involvement*

  Defendant Michaelis worked for the DOC from June 2017 until November 2021. Dkt. 119 at 1 (Michaelis Declaration). Initially, Defendant Michaelis served as a Registered Nurse III at AHCC but, in Summer 2021, she transitioned out of a direct care position and into the role of a Resolution Request Specialist at that same facility. *Id.* at 1–2. She describes her duties as a Resolution Request Specialist as follows:

> Review of the Resolution Request, review medical records, review all documents related to the care at issue in the grievance, looked objectively at the care provided or not provided and any potential medical effects related to the care at issue. My response was evidence based and placed in writing. In this role I would also determine what if any medical care was required and then determine if the care provided complied with the offender healthcare plan.

*Id.* at 2. Defendant Michaelis did not provide direct medical care to Plaintiff while serving as a Registered Nurse at AHCC. *Id.* She did, however, process four of his medical grievances in her capacity as a Resolution Request Specialist. *Id.* at 2–3 (referencing Dkt. 119-1 (Resolution Request No. 21737124 and Related Medical Records), Dkt. 119-2 (Resolution Request No. 21738444 and Related Medical Records), Dkt. 119-3 (Resolution Request No. 21738445 and Related Medical Records), and Dkt. 119-4 (Resolution Request No. 21741631 and Related Medical Records)).

      (ii)  *Overview of Defendant McIntyre's duties and personal involvement*

  Defendant McIntyre was employed by the DOC for twenty-five years and, from September 2018 until March 2023, he worked at AHCC as a Health Services Manager 2. Dkt. 113 at 1 (McIntyre Declaration). His primary responsibilities as a Health Services Manager included providing administrative, non-clinical supervision for medical staff and responding to

inmates' appeals relating to their medical care. *Id.* Defendant McIntyre was also responsible for responding to inmates' emergency medical grievances by ensuring an inmate was promptly assessed by a medical provider and, if an emergency was found, ensuring necessary medical treatment was arranged. *Id.* at 3.

Defendant McIntyre is not a licensed medical provider and, as such, he did not provide direct medical care to Plaintiff. *Id.* at 2. Defendant McIntyre was involved in processing two of the medical grievances Plaintiff filed while housed at AHCC. *Id.* at 2–3. In particular, Defendant McIntyre investigated a medical grievance on appeal and responded to an emergency medical grievance. *Id.* (referencing Dkt. 113-1 (Resolution Request No. 21737124 and related Medical Records) and Dkt. 113-2 (Resolution Request No. 22761919 and related Medical Records)).

(iii)    *Medical grievances processed by Defendants Michaelis and McIntyre*

**Resolution Request No. 21737124.** The first medical grievance Defendants Michaelis and McIntyre processed was submitted by Plaintiff on August 18, 2021, concerning chronic knee and foot pain and a recent emergency room visit for kidney pain. Dkt. 119 (Michaelis Declaration); Dkt. 119-1 at 2–5 (Resolution Request No. 21737124 and Related Medical Records). In his grievance, Plaintiff requested a knee brace, diabetic socks, shoes/shoe inserts, and relocation to a more easily accessible cell. *Id.* Plaintiff's suggested remedy for this grievance was $50,000 in damages, a transfer to Stafford Creek Correction Center ("SCCC"), and, in the event of his death, $30,000,000 in damages for his family. *Id.*

On September 2, 2021, Defendant Michaelis attempted an informal resolution of Plaintiff's grievance by informing him that his health concerns to had already been reported to his primary care provider by the nurse who assessed him at his recent emergency room visit. *Id.*

at 2. Defendant Michaelis informed Plaintiff that she had also contacted his primary care provider about the health concerns raised in his grievance. *Id.*

Defendant Michaelis then provided a formal response on October 4, 2021. *Id.* at 4. In that response, Defendant Michaelis informed Plaintiff that he was medically cleared for kidney stones and that he had an appointment scheduled for October 5, 2021, to further address his kidney pain. *Id.* at 4. With regard to his relocation request, Defendant Michaelis noted the matter was resolved as Plaintiff was moved to a lower bunk on a lower floor in September 2021. *Id.* She then advised that Plaintiff's concerns about chronic conditions would be addressed at his scheduled medical appointments. *Id.* at 5. Defendant Michaelis also noted that Plaintiff had stopped taking his insulin, reminded him of his responsibility to also care for his health, and provided examples of actions Plaintiff could take to stabilize his blood sugar. *Id.* at 4. Finally, Defendant Michaelis noted that Plaintiff filed a large number of medical grievances since arriving to AHCC in August 2021 and outlined the respective procedures for Plaintiff to properly request medical treatment for chronic, non-urgent, and urgent medical concerns. *Id.* at 4–5 (stating that Plaintiff submitted eleven "kites" in one week, and each improperly raised more than one concern with varying degrees of urgency).

After Defendant Michaelis provided the initial response for this grievance, Plaintiff appealed through two levels of review within the Resolution Request Program. Dkt. 89-3 (Resolution Request Log). Thereafter, Defendant McIntyre performed the Level II investigation for this grievance. Dkt. 113 (McIntyre Declaration) (referencing Dkt. 113-1 (Resolution Request No. 21737124 and related Medical Records). The Level II response for this grievance and attached records reviewed by Defendant McIntyre reflect that Plaintiff had twenty-one medical visits from the time he filed his initial grievance in August 2021 until Defendant McIntyre met with Plaintiff as part of the investigation in January 2022. Dkt. 113-1 at 13, 20–21 (Resolution

Request No. 21737124 and related Medical Records). During this same period, Plaintiff received

four medical consultation requests, including approved requests for a renal ultrasound and

diabetic shoe-inserts. *Id.* at 13–17. The Level II response and attached records further reflect that

Plaintiff did not appear for a medical visit to address his kidney pain on October 26, 2021,

though it remains unclear whether Plaintiff was at fault for this absence. *Id.* at 13, 24.

At the conclusion of Defendant McIntyre's investigation, Health Services Administrator

Zainab A. Ghazal, who is not a party to this action, provided the Level II response, stating that

Plaintiff had access to medical care required by DOC Policy and reminding Plaintiff of the

proper procedures for requesting both emergency and non-emergency medical care for new or

worsening symptoms. *Id.* at 13. Plaintiff did not appeal this grievance beyond Level II. *See* Dkt.

89-3 (Resolution Request Log).

***Resolution Request No. 21738444.*** The second medical grievance Defendant Michaelis

processed was submitted by Plaintiff on September 9, 2021, and concerned two interactions with

an unnamed nurse about a diabetic treatment refusal form. Dkt. 119-2 (Resolution Request No.

21738444 and Related Medical Records)). Plaintiff complained that, on August 26, 2021, an

unidentified nurse pressured him to sign a form documenting his refusal to receive diabetic

treatment during a COVID-19 lockdown. *Id.*; *see also* Dkt. 119 at 2 (Michaelis Declaration).

When Plaintiff resumed his treatment a month later, he states the same nurse attempted to justify

her earlier conduct by allegedly explaining to him she could have lost her job if Plaintiff refused

to sign the form. Dkt. 119-2 (Resolution Request No. 21738444 and Related Medical Records)).

Plaintiff's suggested remedy for this grievance was $20,000 in damages and remedial training for

the nurse. *Id.*

After speaking to the nurse in question and reviewing Plaintiff's grievance, Defendant

Michaelis attempted to informally resolve this grievance by informing Plaintiff there was a

miscommunication regarding his treatment refusal form and by confirming that he was not required to sign any forms, including a treatment refusal form. *Id.* at 2–3; Dkt. 119 at 2 (Michaelis Declaration). In her formal response provided on October 19, 2021, Defendant Michaelis expressed her apologies to Plaintiff that he felt pressured to sign a treatment refusal form, reaffirmed that Plaintiff was not required to sign such forms, and stated that the nurse in question understands she cannot compel inmate signatures. Dkt. 119-2 at 3 (Resolution Request No. 21738444 and Related Medical Records).

Plaintiff appealed Defendant Michaelis' response, but his Level I appeal was rejected for "abuse by quantity." *Id.* at 9–11. Per the DOC's Resolution Program Manual, "abuse by quantity" is defined as "submitting additional resolution requests or appeals which would take the total active concerns past 5 or submitting repeated requests on the same issue." Dkt. 89-1 at 26 (DOC Resolution Program Manual, revised March 2021); Dkt. 89-2 at 26 (DOC Resolution Program Manual, revised October 2022). Plaintiff obtained review of the rejection decision, which was upheld on appeal. *Id.* at 12–13.

***Resolution Request No. 21738445.*** The third medical grievance Defendant Michaelis processed was submitted by Plaintiff on September 19, 2021, concerning follow-up care for his kidney pain and seeking additional responses to his other medical "kites" and grievances. Dkt. 119-3 (Resolution Request No. 21738445). Plaintiff's suggested remedy for this grievance was $50,000 in damages, a transfer to SCCC, and, in the event of his death, $30,000,000 in damages for his family. *Id.*

In her response provided on September 23, 2021, Defendant Michaelis informed Plaintiff that she reviewed his medical records and found "A) responses to your kites, B) rapid nursing responses when you've declared medical emergencies and C) your practitioner scheduled 2 appointments for you. One was rescheduled due to Priority Traffic and the other, you did not

arrive for your appointment. I also see documentation that you are not taking prescribed

medications as ordered." *Id.* at 3; *see also* Dkt. 119 at 3 (Michaelis Declaration). She then

instructed Plaintiff to submit a scheduling request to his primary care provider for his next

appointment and also informed him that a consultation for his kidney issue was requested and

pending approval. Dkt. 119-3 (Resolution Request No. 21738445); *see also* Dkt. 119 at 3

(Michaelis Declaration).

Plaintiff did not appeal Defendant Michaelis' response to this grievance beyond Level I.

*See* Dkt. 89-3 (Resolution Request Log).

***Resolution Request No. 21741631.*** The fourth and final medical grievance Defendant

Michaelis processed was submitted by Plaintiff on October 27, 2021, again concerning his

experience with the diabetic treatment refusal form. Dkt. 119-4 (Resolution Request No.

21741631). As the suggested remedy, Plaintiff again requested transfer to SCCC and stated that

he "will not take ins[ulin] as long as I am forced to stay here at [AHCC]." *Id.*

Because Defendant Michaelis found this grievance duplicative of the concerns Plaintiff

raised in Resolution Request Nos. 21738444 and 21737124, she advised Plaintiff that his

grievance would not be accepted per Program restrictions on duplicate grievances. *Id.*; *see also*

Dkt. 89-1 at 9 (DOC Resolution Program Manual, revised March 2021; outlining Program

restriction on "[d]uplicate Resolution Requests about same concern"); Dkt. 89-2 at 9 (DOC

Resolution Program Manual, revised October 2022; same). She also advised Plaintiff that, if he

wished to terminate his diabetic treatment, he should submit a "kite" to his interim primary care

provider. *Id.*

Plaintiff did not appeal Defendant Michaelis' decision not to accept this grievance. *See*

Dkt. 89-3 (Resolution Request Log); *see also* Dkt. 89-1 at 26 (DOC Resolution Program Manual,

revised March 2021; stating that decisions not to accept a grievance or appeal may be appealed

1    to the Program Manager); Dkt. 89-2 at 26 (DOC Resolution Program Manual, revised October

2    2022; same).

3        ***Resolution Request No. 22761919.*** Finally, Defendant McIntyre processed an emergency

4    medical grievance filed by Plaintiff on July 5, 2022, which concerned chronic knee pain, left

5    kidney pain, and medication refills. Dkt. 113 at 2 (McIntyre Declaration) (referencing Dkt. 113-2

6    (Resolution Request No. 22761919 and related Medical Records).

7        Upon receiving the emergency grievance, Defendant McIntyre arranged for Plaintiff to be

8    seen by appropriate medical providers. Dkt. 113 at 2 (McIntyre Declaration). The emergency

9    grievance response and attached medical records reflect that Plaintiff was seen for his various

10   medical concerns during five separate medical visits occurring from July 3 through July 12,

11   2022. Dkt. 113-2 (Resolution Request No. 22761919). One such medical visit took place the

12   morning Plaintiff submitted his grievance. Dkt. 113-3 (Record for July 5, 2022, Medical

13   Encounter). At that visit, medical records show that Plaintiff's vital signs were within normal

14   limits; additionally, medical staff discussed Plaintiff's health concerns, recent test results,

15   medication refills, future appointments, and the proper procedures for Plaintiff to request further

16   medical treatment. *Id.*; Dkt. 113-3 (Record for July 5, 2022 Medical Encounter). Plaintiff was

17   also seen for his reported kidney pain on July 7, 2022. Dkt. 113-4 (Record for July 5, 2022

18   Medical Encounter). The records for that visit show that Plaintiff received a physical

19   examination of the abdominal area he indicated as painful, a urinalysis, a renal panel, additional

20   labs, and an order for further imaging. *Id.*

21       Plaintiff did not appeal Defendant McIntyre's response to this emergency grievance. *See*

22   Dkt. 89-3 (Resolution Request Log).

23

24

1

(iv)    *Subsequent Review by Resolution Request Program Manager*

2    In connection with this litigation, Nonparty Carol Smith, the DOC's Resolution Request

3    Program Manager, reviewed all grievances filed by Plaintiff while in DOC custody, including

4    those processed by Defendants Michaelis and McIntyre. Dkt. 89 at 5 (Smith Declaration)

5    (referencing Dkt. 89-3 (Resolution Request Log)). Based on the knowledge and experience

6    gained through her position, Nonparty Smith found that each Resolution Request was "reviewed

7    and resolved in compliance with all applicable DOC policies and procedure." *Id.*

8            b.    *Deliberate Indifference (Count I)*

9    In Count I, Plaintiff alleges he suffered deliberate indifference to his serious medical

10    needs arising from (1) treatment and diagnostic delays for kidney cancer, (2) insufficient

11    treatment for diabetes, and (3) delays in providing access to a CPAP machine and other

12    medications. Dkt. 52 at 4–5.[5]

13    In their Cross-Motion, Defendants concede that Plaintiff experienced "brief delays" in

14    receiving a CPAP machine and certain medications while in DOC custody. Dkt. 112 at 2.

15    Nevertheless, they argue that Defendants Michaelis and McIntyre are entitled to summary

16    judgment on Count I because neither engaged in conduct amounting to deliberate indifference

17    while processing and/or investigating Plaintiff's medical grievances. Dkt. 112 at 11–13, 14–18.

18    Urging a different result, Plaintiff contends that the medical treatment he received while in DOC

19

20

21

---

[5] The Court references allegations in the Second Amended Complaint only to provide context for each claim. The Second Amended Complaint is not signed under penalty of perjury, so the allegations therein are not evidence to be considered at summary judgment. *Whitman v. Mineta*, 107 F. App'x 28, 30 n. 1 (9th Cir. 2004) (citing *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir.1995); *Soto v. Unknown Sweetman*, 882 F.3d 865, 872–73 (9th Cir. 2018) (statements in an unsworn or unverified pleading are not competent evidence to demonstrate a genuine issue of disputed material fact); *see also Celotex*, 477 U.S. at 324 ("Rule 56(e) therefore requires the nonmoving party to *go beyond the pleadings* and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (emphasis added).

REPORT AND RECOMMENDATION - 29

custody was constitutionally deficient. *See* Dkt. 120. He does not, however, raise any particular argument regarding Defendants Michaelis and McIntyre's liability on Count I.

(i)      *Applicable law*

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain," which is a violation of the Eighth Amendment's guarantee against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see also Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment deliberate indifference claim has two elements: (1) the plaintiff had a serious medical need and (2) the defendant responded to that need with deliberate indifference. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

For the first element, a medical need is serious "if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). The following are examples of serious medical needs: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; [and] the existence of chronic and substantial pain." *Id.* at 1059–60.

For the second element, a plaintiff must show the defendant responded to his serious medical need with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1970). "Deliberate indifference is a high legal standard," *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), this second element requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id.* It is "obduracy and

wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by

the Cruel and Unusual Punishments Clause." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

Accordingly, a prison official will be found deliberately indifferent to a prisoner's serious

medical needs only if the "official knows of and disregards an excessive risk to inmate health or

safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Id.*

"A showing of medical malpractice or negligence is insufficient to establish a

constitutional deprivation under the Eighth Amendment." *Toguchi* 391 F.3d at 1060. Further, a

mere difference of opinion about treatment between plaintiff and prison medical authorities

"does not give rise to a § 1983 claim." *Franklin v. State of Or., State Welfare Div.*, 662 F.2d

1337, 1344 (9th Cir. 1981). A prisoner must instead show the chosen course of treatment "was

medically unacceptable under the circumstances," and was chosen "in conscious disregard of an

excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996),

*overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014); *see also*

*Toguchi*, 391 F.3d at 1058.

Deliberate indifference "may appear when prison officials deny, delay or intentionally

interfere with medical treatment, or it may be shown by the way in which prison physicians

provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). However,

a defendant's delay in providing a prisoner treatment amounts to deliberate indifference only

when the delay is harmful and such harm is not an isolated occurrence. *See Shapley v. Nevada*

*Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985); *Amarir v. Hill*, 243 F. App'x.

353, 354 (9th Cir. 2007); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

1

(ii)    *Analysis*

2       Plaintiff's Eighth Amendment deliberate indifference claims against Defendants

3   Michaelis and McIntyre fail as a matter of law because he has not submitted or identified

4   evidence capable of showing that either Defendant knowingly disregarded a serious risk to his

5   health. *Farmer*, 511 U.S. at 837. Instead, the undisputed record reflects that both Defendants

6   fulfilled their administrative duties and took appropriate steps to ensure that Plaintiff received

7   timely and adequate medical attention in response to his medical grievances. *See Leer*, 844 F.2d

8   at 633 (individual liability analysis in § 1983 actions must be based on the duties and

9   responsibilities of each defendant); *Peralta*, 744 F.3d at 1082–83 (finding individual defendant

10  not liable for medical deliberate indifference where they lacked authority to provide certain

11  care).

12      With respect to Defendant Michaelis, the evidence shows that she responded to Plaintiff's

13  medical concerns in her role as a Resolution Request Specialist, reviewed his relevant medical

14  records, communicated with Plaintiff's providers, and processed his grievances in a manner

15  consistent with the DOC's Resolution Program. Dkts. 119, 119-1 through 119-4 (Michaelis

16  Declaration and Supporting Exhibits). Further, in several instances, Defendant Michaelis noted

17  that Plaintiff did not attend scheduled appointments, refused prescribed medications, and/or

18  failed to follow the proper procedures for requesting medical treatment. Dkt. 119-1 (Resolution

19  Request No. 21737124); Dkt. 119-3 (Resolution Request No. 21738445); Dkt. 119-4 (Resolution

20  Request No. 21741631); Dkt. 119 at 2–3 (Michaelis Declaration). In these instances, Defendant

21  Michaelis demonstrated good faith and concern for Plaintiff's well-being by providing

22  counseling on how he may better track his medical appointments, how to manage his diabetes in

23  light of his insulin refusal, and how to properly request treatment for his various health concerns.

24

1    Dkt. 119-1 (Resolution Request No. 21737124); Dkt. 119-3 (Resolution Request No. 21738445);

2    Dkt. 119-4 (Resolution Request No. 21741631); Dkt. 119 at 2–3 (Michaelis Declaration).

3        Thus, the record does not support a finding that Defendant Michaelis acted with

4    conscious disregard for Plaintiff's health, nor does it show that she refused or delayed his

5    medical treatment. Although Plaintiff may disagree with the medical treatment he received while

6    in DOC custody, this discontent does not create a genuine issue of material fact as to Defendant

7    Michaelis' deliberate indifference to his medical needs. *See Toguchi*, 391 F.3d at 1060

8    (deliberate indifference requires more than a difference of opinion regarding the course of

9    treatment provided); *Celotex*, 477 U.S. at 324 (the nonmoving party must go beyond his or her

10    own pleadings and designate "specific facts showing that there is a genuine issue for trial").

11        As for Defendant McIntyre, the evidence shows that his role as a Health Services

12    Manager 2 at AHCC was limited to administrative oversight of medical staff, ensuring inmates

13    who filed emergency grievances were seen by appropriate medical providers, and

14    investigating—but not formally responding to—appeals of medical grievances. Dkt. 113 at 1

15    (McIntyre Declaration). Nothing in the summary judgment record supports the conclusion that

16    Defendant McIntyre exhibited deliberate indifference by ignoring Plaintiff's medical grievance

17    or obstructing his access to care.

18        Rather, in performing his role, Defendant McIntyre conducted a Level II investigation for

19    one of Plaintiff's medical grievances and arranged for Plaintiff to receive treatment in response

20    to an emergency medical grievance. *Id.* at 2–3; Dkt. 113-1 (Resolution Request No. 21737124);

21    Dkt. 113-2 (Resolution Request No. 22761919). As a part of both functions, Defendant McIntyre

22    took steps to ensure Plaintiff received care for his complaints of kidney pain, diabetes, and other

23    chronic issues. Throughout the Level II investigation, Defendant McIntyre confirmed that

24    Plaintiff had received timely medical appointments, diagnostic testing, and consultation requests

1   for the health concerns raised in his grievances. Dkt. 113-1 (Resolution Request No. 21737124);

2   Dkt. 113 (McIntyre Declaration). And, in responding to Plaintiff's emergency grievance,

3   Defendant McIntyre arranged for Plaintiff to be seen by medical providers within the same day

4   and week the emergency grievance was filed. Dkt. 113-2 (Resolution Request No. 22761919);

5   Dkt. 113 (McIntyre Declaration).

6          Seeking a different result, Plaintiff maintains that he did not receive constitutionally

7   sufficient medical treatment while in DOC custody and argues that a lack of responsiveness to

8   his grievances delayed his diagnosis and treatment for kidney cancer. To demonstrate his current

9   kidney cancer diagnosis and the existence of "systemic" failures within the DOC medical

10  system, Plaintiff submits medical records dated several years after his release from DOC

11  custody; the results of an OCO investigation into the sufficiency of various cancer diagnoses and

12  treatment for eleven unnamed DOC inmates;[6] and a sworn declaration from Nonparty C Bey El,

13  discussing Plaintiff's post-release medical care for kidney cancer. Dkt. 129 at 5–32.[7] Further, in

14  his own sworn Declaration, Plaintiff recounts instances where various individuals who are not

15  parties to this litigation purportedly mishandled his medical grievances. Dkt. 127 at 1–2 (Plaintiff

16  Declaration). Plaintiff does not, however, submit any evidence showing that Defendants

17

18  ───────────────

    [6] Plaintiff states that the OCO investigation results are intended as evidence of "systemic failure," and does not
19  contend that the investigation is proof of the particular treatment he received while in DOC custody. Dkt. 129 at 2–
    3. Nevertheless, the Court notes that, though anonymized, the demographic and medical information included in the
20  investigative case summaries show that Plaintiff was not a subject of that investigation. *See id.* at 15–25 (case
    summaries of cancer diagnosis and treatment for "Patient A" through "Patient K").

21  [7] The Court also observes that Plaintiff submitted this evidence for the first time with his Reply brief, which may
    provide grounds for excluding it from the record at summary judgment. *See Karpenski v. Am. Gen. Life Companies,*
22  *LLC*, 999 F. Supp. 2d 1218, 1226 (W.D. Wash. 2014) (striking new evidence submitted in reply that should have
    been introduced in opening brief and noting general rule that a "movant may not raise new facts or arguments in his
23  reply brief."); *see also M.L. v. craigslist Inc.*, No. 3:19-CV-06153-BHS-TLF, 2021 WL 5205578, at *2 (W.D. Wash.
    Sept. 16, 2021), *report and recommendation adopted*, 2022 WL 1210830 (W.D. Wash. Apr. 25, 2022) ("It would be
24  improper to allow [the movant] to introduce new evidence in their reply brief; [the nonmovant] does not have the
    opportunity to substantively respond to the new evidence."). However, absent request to strike this evidence from
    Defendants, the Court considers it part of the summary judgment record.

Michaelis and McIntyre knowingly engaged in, or acquiesced to, conduct that delayed his diagnosis and treatment for kidney cancer while in DOC custody.

Even if Plaintiff had submitted some evidence connecting Defendants Michaelis and McIntyre to his claims, he has still failed to show that their participation was knowing and intentional rather than inadvertent and negligent. *See Jett*, 439 F.3d at 1096 ("[A]n inadvertent or negligent failure to provide adequate medical care alone does not state a claim under § 1983.") (internal quotations and citations omitted). This failure of proof is fatal to Plaintiff's deliberate indifference claims and renders all other factual disputes immaterial at summary judgment. *See Wilson*, 501 U.S. at 300–01 (evidence of a "systemic" or "continuing" prison condition does not eliminate requirement to prove individual knowledge and intent for deliberate indifference claim); *Celotex*, 477 U.S. 323 (where there is a complete failure of proof concerning an essential element of a claim, all other facts are rendered immaterial at summary judgment).

In sum, the record does not support a finding that either Defendant Michaelis or Defendant McIntyre acted with the kind of "obduracy and wantonness" required for a claim of deliberate indifference. *Wilson*, 501 U.S. at 299 (citations and quotations omitted). Rather, the evidence reflects that, where involved, both Defendants fulfilled their administrative duties and facilitated Plaintiff's access to medical care. *See Leer*, 844 F.2d at 633; *Peralta* 744 F.3d at 1082–83. As such, no reasonable jury could find that Defendants Michaelis and McIntyre violated Plaintiff's Eighth Amendment rights. Therefore, the undersigned recommends that summary judgment be **GRANTED** in favor of Defendants Michaelis and McIntyre on Count I of the Second Amended Complaint.

c.    *Equal Protection (Count II)*

In Count II, Plaintiff alleges his rights under the Equal Protection Clause were violated because unspecified Defendants treated "others w/ similar situations differently." Dkt. 52 at 6–7.

Defendants argue that Defendant Michaelis and McIntyre are entitled to judgment as a matter of law on Count II because Plaintiff failed to plausibly allege that any Defendant acted with discriminatory intent in his Second Amended Complaint and is now unable to present evidence establishing this essential element of his Equal Protection claim at summary judgment. Dkt. 112 at 18–19. Plaintiff contends, without presenting supporting evidence, that it is "very likely the staff" treated him differently from other inmates due to the nature of his underlying criminal conviction and because of his race. Dkt. 120 at 6.

(i)    <em>Applicable law</em>

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). Proof of different or inconsistent treatment by a state or state actor is not enough to demonstrate a violation of equal protection in a § 1983 action. *See Griffin v. County Sch. Bd. of Prince Edward County,* 377 U.S. 218, 230 (1964). Rather, to succeed on an equal protection claim, a plaintiff must demonstrate that a defendant acted with an intent or purpose to discriminate against him based on his membership to a protected class. *See Furnace v. Sullivan,* 705 F.3d 1021, 1030 (9th Cir. 2013) (quotations and citations omitted) (rejecting equal protection claim where inmate failed to show that he was treated differently than any other inmates in the relevant class).

"'Discriminatory purpose'…implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker…selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Navarro v. Block,* 72 F.3d 712, 716 n. 5 (9th Cir. 1995) (quoting *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979)). Some of the evidence that can establish discriminatory intent includes the "historical background of the decision…particularly if it

1    reveals a series of official actions taken for invidious purposes." *Id.* at 716 (citations and

2    quotations omitted).

3       Mere speculation about a discriminatory purpose, without supporting facts, does not

4    establish discriminatory intent. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009) (finding

5    equal protection claim deficient at pleading stage where discriminatory intent was shown only by

6    conclusory allegations without supporting factual allegations). Furthermore, the fact that a

7    facially neutral policy may have a "foreseeably disproportionate impact" on a protected group,

8    without more, does not rise to the level of an equal protection violation. *Lee v. City of Los*

9    *Angeles*, 250 F.3d 668, 687 (9th Cir. 2001); *see also Roberts v. Spalding*, 783 F.2d 867, 872 (9th

10   Cir. 1986) (affirming district court's denial of equal protection claim based on Washington State

11   regulations for access to medical care by prisoners, and finding the regulations to be "reasonably

12   related to the provision of adequate medical care to prison inmates consistent with the legitimate

13   security and financial needs of the institution").

14            (ii)  *Analysis*

15      The first step in determining whether Defendants Michaelis and McIntyre violated

16   Plaintiff's right to equal protection is to identify the relevant class to which he purportedly

17   belonged. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) ("The groups

18   must be comprised of similarly situated persons so that the factor motivating the alleged

19   discrimination can be identified.").

20      It is at this step that Plaintiff's vague contention about being treated differently based on

21   his criminal conviction fails. In particular, Plaintiff does not identify what crime he was

22   convicted of, nor does he submit proof of similarly situated individuals outside of this group that

23   were treated differently from him. *See Thornton*, 425 F.3d at 1167 ("An equal protection claim

24

will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff.") (internal quotation marks omitted).

With respect to his contention about being treated differently on account of his race, Plaintiff again fails to identify similarly situated individuals outside of his racial group who received different treatment. Moreover, there is no evidence in the record showing Defendants Michaelis and McIntyre harbored racial animus or acted with discriminatory intent when processing Plaintiff's medical grievances. Instead, the evidence demonstrates that, in performing their administrative functions, Defendants Michaelis and McIntyre adhered to the DOC's policies and procedures for processing inmate grievances submitted through the Resolution Request Program. Dkt. 89 at 5 (Smith Declaration) (reviewing all medical grievances filed by Plaintiff from 2021 until 2022) (citing Dkt. 89-3 (Resolution Request Log)).

Ultimately, Plaintiff's conclusory statements and speculation about discriminatory treatment are insufficient to avoid summary judgment on his Equal Protection claims against either Defendant. *Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001) ("[T]o survive summary judgment[, a plaintiff] must put forward specific, nonconclusory factual allegations that establish improper motive.") (citations and quotations omitted); *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir.2002) (citations omitted) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.").

Because no reasonable jury could find that Defendants Michaelis and McIntyre violated Plaintiff's rights under the Equal Protection Clause, summary judgment is warranted in their favor on Count II. Therefore, the undersigned recommends that summary judgment be **GRANTED** in favor Defendants Michaelis and McIntyre on Count II of the Second Amended Complaint.

1

### d.    *Due Process (Count III)*

2

Defendants also assert that it is difficult to ascertain the nature and scope of Plaintiff's

3

Fourteenth Amendment claims but argue nonetheless that Defendants Michaelis and McIntyre

4

cannot be held liable under § 1983 for merely processing Plaintiff's grievances without an

5

"affirmative link" between them and any alleged violation of his constitutional rights. Dkt. 112 at

6

4, 14–15. The Court agrees with Defendants that Plaintiff's Fourteenth Amendment claims are

7

not clearly defined. Indeed, neither Plaintiff's Second Amended Complaint nor his summary

8

judgment materials identify what, if any, action Defendants Michaelis and McIntyre took that

9

resulted in a violation of his rights under the Due Process Clause of the Fourteenth Amendment.

10

Out of an abundance of caution, however, the Court assumes Count III asserting a

11

procedural due process violation, rather than a substantive due process violation,[8] and examines

12

Defendant Michaelis' decision not to accept one of Plaintiff's medical grievances for review.

13

Dkt. 119 at 3 (Michaelis Declaration); Dkt. 119-4 (Resolution Request No. 21741631). As there

14

is no evidence or allegation that Defendant McIntyre declined to review any of Plaintiff's

15

medical grievances, it is unnecessary to perform even a cautionary review of a potential

16

procedural due process claim against him in determining that Defendant McIntyre is entitled to

17

summary judgment on Count III

18

### (i)    *Applicable law*

19

The Fourteenth Amendment to the United States Constitution provides that no state shall

20

"deprive any person of life, liberty, or property, without due process of law." U.S. Const.

21

22

23

24

---

[8] Because Count III merely repackages the injuries Plaintiff already asserted under the Eighth Amendment in Count I and the Equal Protection Clause in Count II, any substantive due process claim in Count III is subsumed by the other claims in this case and does not provide Plaintiff an independent basis for relief. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("[I]f a constitutional claim is covered by a specific constitutional provision,…the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.") (quoting *United States v. Lanier*, 520 U.S. 259, 272, n. 7 (1997)).

REPORT AND RECOMMENDATION - 39

1    Amend. XIV, § 1. Procedural due process claims are assessed in two steps. First, the Court

2    determines whether a plaintiff was deprived of a constitutionally protected liberty or property

3    interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Second, if such an interest is identified,

4    the Court considers whether the procedure protections provided were constitutionally sufficient.

5    *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

6                        (ii)    *Analysis*

7           It is undisputed that Defendant Michaelis did not accept Plaintiff's Resolution Request

8    No. 21741631 for review, which concerned an interaction Plaintiff had with a nurse about his

9    refusal of diabetic treatment in August 2021. Dkt. 119 at 3 (Michaelis Declaration); Dkt. 119-4

10   (Resolution Request No. 21741631). However, Plaintiff does not have a protected interest in the

11   way his grievances are processed. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is

12   no legitimate claim of entitlement to a grievance procedure."); *Buckley v. Barlow*, 997 F.2d 494,

13   495 (8th Cir. 1993) ("A prison grievance procedure is a procedural right only, it does not confer

14   any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest

15   requiring the procedural protections envisioned by the Fourteenth Amendment.") (cleaned up).

16          Assuming *arguendo* that Plaintiff had a vested interest in the specific concerns addressed

17   by his grievance, the evidence does not support his contention that he was denied a

18   constitutionally sufficient review process. Rather, the record shows that Defendant Michaelis did

19   not accept Resolution Request No. 21741631 for review because the concerns raised in that

20   grievance were duplicative of the concerns already raised in Resolution Request Nos. 21737124

21   and 21738444. Dkt. 119 at 3 (Michaelis Declaration); Dkt. 119-4 (Resolution Request No.

22   21741631); Dkt. 119-1 (Resolution Request No. 21737124); Dkt. 119-2 (Resolution Request No.

23   2173844). Thus, at most, the record shows that Defendant Michaelis denied Plaintiff an

24   *additional* opportunity to be heard on his concerns.

1     Moreover, the Program offered inmates additional procedural safeguards when their

2  grievances were not accepted for review by affording the opportunity to appeal rejection

3  decisions. *See also* Dkt. 89-1 at 26 (DOC Resolution Program Manual, revised March 2021;

4  stating that decisions not to accept a grievance or appeal may be appealed to the Program

5  Manager); Dkt. 89-2 at 26 (DOC Resolution Program Manual, revised October 2022; same).

6  Plaintiff did not avail himself of these additional procedural protections. *See* Dkt. 89-3

7  (Resolution Request Log). These circumstances further counsel against a finding that Plaintiff

8  suffered a violation of his procedural due process rights at the hands of Defendant Michaelis. *See*

9  *Mathews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be

10  heard at a meaningful time and in a meaningful manner.") (internal citations and quotations

11  omitted).

12     Because no reasonable jury could find that Defendants Michaelis and McIntyre violated

13  Plaintiff's rights under the Due Process Clause, summary judgment is warranted in their favor on

14  Count III. Therefore, the undersigned recommends that summary judgment be **GRANTED** in

15  favor Defendants Michaelis and McIntyre on Count III of the Second Amended Complaint.

16     2.    Supervisory Defendants

17     Defendants next argue they are entitled to summary judgment on Plaintiff's claims

18  against the following individuals because none can be held liable solely by virtue of their

19  supervisory roles: Defendants James Key (former AHCC Superintendent and current DOC

20  Deputy Assistant Secretary), Dean Mason (WCC Superintendent), Dan White (MCC

21  Superintendent), Robert Jackson (Washington State Penitentiary ("WSP") Superintendent),

22  Cheryl Strange (former DOC Secretary), and Jack Richardson (Sergeant and Corrections Officer

23  at AHCC) (collectively "Supervisory Defendants"). Dkt. 112 at 11–14. On the other hand,

24  Plaintiff broadly asserts that the Supervisory Defendants may be held liable based on their

general awareness of the medical concerns he raised through the DOC's Resolution Request Program. Dkt. 120 at 5–6; Dkt. 129 at 1–2.

### a. *Applicable Law*

Section 1983 liability cannot rest on a theory of *respondeat superior*—that is, the mere fact a defendant holds a supervisory position is not enough. *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). Instead, a plaintiff must show that a supervisory defendant personally participated in the alleged deprivation or set in motion a series of acts by others that the defendant knew, or reasonably should have known, would cause constitutional harm. *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011); *Jackson* v. *City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

### b. *Evidence and Analysis*

As stated above, Plaintiff asserts three § 1983 claims in his Second Amended Complaint: deliberate indifference to serious medical needs (Count I), equal protection violation (Count II), and (3) procedural due process violations (Count III). Dkt. 52. Each claim is premised on the alleged mishandling of medical requests and grievances. *Id.* However, Defendants present evidence showing none of the Supervisory Defendants personally engaged in, directed, or knowingly acquiesced in conduct that would amount to any constitutional violation alleged, and Plaintiff has failed to rebut this showing as to any Supervisory Defendant.

### (i) *Defendant James Key*

The evidence shows that Defendant Key served as the AHCC Superintendent from June 2015 until July 2022. Dkt. 115 at 1 (Key Declaration). His duties as AHCC Superintendent included "planning, organizing, and directing all operations at AHCC." *Id.* Defendant Key also played a role in reviewing inmate grievances filed through the Resolution Request Program; depending on the nature of the grievances, either he or the Health Services Administrator issued

1   a formal response to an inmate grievance appealed to Level II, which is the Program's

2   penultimate level of review. Dkt. 89 at 4 (Smith Declaration); *see also* Dkt. 89-1 (DOC

3   Resolution Program Manual, revised March 2021); Dkt. 89-2 (DOC Resolution Program

4   Manual, revised October 2022). Defendant Key's responsibilities did not include providing

5   individualized medical care to AHCC inmates. Dkt. 115 at 1 (Key Declaration).

6       Plaintiff was housed at AHCC from August 2021 until August 2022, and he filed several

7   grievances during that time. Dkt. 88-1 (DOC Movement Log). Only one of those grievances was

8   appealed to Level II. Dkt. 89-3 at 2 (Resolution Request Log, Log ID No. 21737123). However,

9   Plaintiff's Resolution Request Log indicates that particular grievance concerned access to

10  medical care, which fell under the purview of the Health Services Administrator, not Defendant

11  Key. Moreover, Defendant Key testifies that, to his knowledge, he was not involved in reviewing

12  or responding to any of Plaintiff's grievances, nor is he aware of any unconstitutional medical

13  care or treatment provided to Plaintiff while housed at AHCC. Dkt. 115 at 2 (Key Declaration).

14       Thus, Defendants persuasively argue there is no genuine issue of fact as to Defendant

15  Key's personal participation in any constitutional violation alleged here, and Plaintiff has not

16  submitted evidence overcoming this showing.

17             (ii)    *Defendant Dan White*

18       As the former MCC Superintendent, Defendant White was "responsible for overseeing

19  Minimum Security Unit operations," which did not include providing individualized medical

20  care to inmates. Dkt. 114 at 1 (White Declaration). And, like Defendant Key, he was also

21  responsible for responding to non-medical inmate grievances appealed to Level II. Dkt. 89 at 4

22  (Smith Declaration); *see also* Dkt. 89-1 (DOC Resolution Program Manual, revised March

23  2021); Dkt. 89-2 (DOC Resolution Program Manual, revised October 2022). Plaintiff was

24  housed at MCC from September 2, 2022, until his release from DOC custody on November 14,

2022. Dkt. 88-1 (DOC Movement Log). None of the grievances Plaintiff filed during that time was appealed to Level II such that Defendant White would have issued a response or otherwise reviewed the request. Dkt. 89-3 (Resolution Request Log). Confirming this, Defendant White testifies that he was not involved in "any grievances/resolution requests" from Plaintiff, nor did he have access to Plaintiff's medical records. Dkt. 114 at 2 (White Declaration).

Defendants' evidence shows that Defendant White had no direct involvement in any of the unlawful acts alleged in the Second Amended Complaint, and Plaintiff has not presented evidence to refute this showing and establish a genuine issue of material fact that Defendant White violated his constitutional rights.

(iii)    *Defendant Dean Mason*

Next, Defendant Mason has served as the WCC Superintendent since January 2022. Dkt. 117 at 1 (Mason Declaration). Like the superintendents of other DOC facilities, he was responsible for responding to inmate grievances appealed to the second level of review unless a request fell under the purview of the Health Services Administrator. Dkt. 89 at 4 (Smith Declaration); *see also* Dkt. 89-1 (DOC Resolution Program Manual, revised March 2021); Dkt. 89-2 (DOC Resolution Program Manual, revised October 2022). His responsibilities did not include providing individualized medical care to WCC inmates. Dkt. 117 at 1 (Mason Declaration). During Defendant Mason's tenure as WCC Superintendent, Plaintiff was housed at that facility from August 25, 2022, until September 2, 2022. Dkt. 88-1 (DOC Movement Log). None of the grievances Plaintiff filed during this period were appealed to the second level of review such that Defendant Mason would issue a response or otherwise review the grievance. Dkt. 89-3 (Resolution Request Log).

Therefore, Defendants demonstrate there is no basis on which Defendant Mason may be held liable under § 1983, and Plaintiff has not demonstrated otherwise.

REPORT AND RECOMMENDATION - 44

(iv)     *Defendant Robert Jackson*

Defendant Jackson is the Superintendent of WSP, and the evidence shows Plaintiff was not housed at that facility during the events at issue in this case. Dkt. 116 (Jackson Declaration); Dkt. 88-1 (DOC Movement Log). As there is no evidence that Defendant Jackson was in any way involved in the constitutional violations alleged here, he is not liable under § 1983.

(v)     *Defendant Cheryl Strange*

Defendants submit evidence showing that, during her tenure as DOC Secretary, Defendant Strange was not directly involved in reviewing inmate grievances, even if those grievances were appealed to the highest level of review. Dkt. 89 at 4 (Smith Declaration; explaining that the Deputy Secretary issues formal response at final level of review); *see also* Dkt. 89-1 (DOC Resolution Program Manual, revised March 2021); Dkt. 89-2 (DOC Resolution Program Manual, revised October 2022). Furthermore, none of Plaintiff's grievances were pursued through the final level of review and were thus not reviewed by Defendant Strange or her Deputy Secretary. *See* Dkt. 89-3 (Resolution Request Log).

In his summary judgment briefing, Plaintiff contends that Defendant Strange was put on notice and failed to respond to his medical issues after he filed a complaint with the OCO. Dkt. 129 at 2–3; *see also* Dkt. 122 at 3. This bare contention is not enough to avoid summary judgment on his claims against Defendant Strange. *See generally Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (finding "Plaintiffs' sanitized version of the incident cannot control on summary judgment when the record as a whole does not support that version."). And, while Plaintiff states this factual position is supported by email communications[9] submitted with his

---

[9] Email communications between the DOC and OCO were the subject of each of Plaintiff's Motions to Compel Discovery. Dkt. 44 (First Motion to Compel); Dkt. 69 (Second Motion to Compel); Dkt. 83 (Third Motion to Compel). In his summary judgment briefing, Plaintiff suggests that Defendants acted in bad faith by failing to disclose unredacted versions of email correspondence through discovery. Dkt. 129 at 2–3. However, Plaintiff's

First Motion to Compel Discovery, no such evidence was submitted with that Motion. *See* Dkt. 44. In the absence of any evidence to suggest she was personally involved in the alleged mishandling of Plaintiff's grievances or in his healthcare, Defendant Strange is entitled to summary judgment on Plaintiff's claims.

(vi)    *Defendant Jack Richardson*

Finally, during the relevant period, Defendant Richardson was a supervisory corrections officer and sergeant at AHCC. Dkt. 118 (Richardson Declaration). His duties did not include providing medical care to inmates, and he affirms that he is unaware of any unconstitutional medical care or treatment provided to Plaintiff while at AHCC. *Id.* at 1–2. In the absence of any evidence from which the Court could infer his direct involvement in violating Plaintiff's constitutional rights, Defendant Richardson may not be held liable in this § 1983 action.

In sum, Plaintiff presents no genuine dispute of material fact as to whether any of the Supervisory Defendants personally participated in conduct constituting deliberate indifference to a serious medical need (Count I), discriminatory treatment (Count II), or a procedural due process violation (Count III). Instead, Plaintiff appears to sue each based solely on their supervisory positions within the DOC and DOC facilities, which is not a sufficient basis for imposing liability under § 1983. *See Lemire*, 726 F.3d at 1074.

Therefore, the undersigned recommends that summary judgment be **GRANTED** in favor of Defendants Key, Mason, White, Jackson, Strange and Richardson on all Counts of the Second Amended Complaint.[10]

---

requests to compel discovery of unredacted emails were denied for various reasons, including failure to sufficiently identify the emails he wished to compel. *See* Dkt. 48 (Order Denying First Motion to Compel); Dkt. 73 (Order Denying Second Motion to Compel); Dkt. 91 (Order Denying Third Motion to Compel). Thus, Plaintiff's suggestion of bad faith is unsupported by the record in this case.

[10] Having concluded that all individually named Defendants are entitled to summary judgment on the merits of Plaintiff's claims, the Court declines to reach Defendants' alternative argument regarding qualified immunity.

3.   <u>Defendant Department of Corrections</u>

Finally, Defendants argue that they are entitled to summary judgment on all claims against Defendant DOC because it is not a proper defendant under § 1983. Dkt. 112 at 11. The Court agrees.

Section 1983 provides a cause of action only for constitutional violations proximately caused by a "person" acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Neither a state nor its agencies qualify as a "persons" that can be sued under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Defendant DOC, as an agency of the State of Washington, is not a "person" capable of being sued under § 1983.

Therefore, the undersigned recommends that summary judgment be **GRANTED** in favor of Defendant DOC on all Counts of the Second Amended Complaint.

## VIII.   CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that:

- Defendants' Objections/Requests to Strike Evidence (Dkt. 121 at 8–9; Dkt. 128 at 2–5) are **DENIED**;

- Plaintiff's Motion to Strike Summary Judgment Statements regarding Dr. Jeong H. Yoon (Dkt. 124) is **DENIED**;

- Plaintiff's Motion for Leave to Amend his Second Amended Complaint (Dkt. 125) is **DENIED**;

- Plaintiff's Request for Court-Ordered Mediation (Dkt. 132 at 1, 5) is **DENIED**; and

- Defendants' Motion to Strike Plaintiff's Supplemental Response in opposition to Motion for Summary Judgment (Dkt. 133) is **GRANTED**.

Additionally, the Court concludes that summary judgment is warranted in favor of Defendants on all claims asserted in Plaintiff's Second Amended Complaint. Accordingly, the undersigned recommends that Defendants' Cross-Motion for Summary Judgment (Dkt. 112) be

**GRANTED**, Plaintiff's Cross-Motion for Summary Judgment (Dkt. 120) be **DENIED**, and Plaintiff's Second Amended Complaint (Dkt. 52) be **DISMISSED with prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **July 25, 2025**, as noted in the caption.

Dated this 10th day of July, 2025.

Grady J. Leupold
United States Magistrate Judge