1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
9                                   AT SEATTLE

10

11    MAURICE ANTHONY BROWN,                    CASE NO. 2:22-cv-00828-LK

                              Plaintiff,        ORDER ADOPTING REPORT AND
12             v.                               RECOMMENDATION

13    JACI MICHAELIS et al.,

14                            Defendants.

15

16          This matter comes before the Court on the Report and Recommendation ("R&R") of

17    United States Magistrate Judge Grady J. Leupold. Dkt. No. 140. For the reasons explained below,

18    the Court adopts the R&R in full and enters summary judgment in Defendants' favor.

19                              **I.    BACKGROUND**

20          Plaintiff Maurice Anthony Brown commenced this pro se prisoner civil rights action under

21    42 U.S.C. § 1983 in June 2022. Dkt. No. 1. In his operative complaint, he alleges that his

22    constitutional rights were violated while in the custody of the Washington State Department of

23    Corrections ("DOC"). Dkt. No. 52 at 4–6; *see also* Dkt. No. 100 at 2. The complaint names the

24    DOC as well as several individuals—who range from DOC leadership to facility superintendents

ORDER ADOPTING REPORT AND RECOMMENDATION - 1

1   and staff—as defendants. Dkt. No. 52 at 3 (incorporating list of defendants from motion at docket

2   number 49).

3          Mr. Brown alleges that he had serious medical needs during his incarceration at various

4   DOC facilities from June 2021 to November 2022. Dkt. No. 120 at 3.[1] These included kidney pain,

5   which he claims preceded a later diagnosis of kidney cancer after his release from DOC custody;

6   diabetes, for which he claims he received insufficient treatment; and chronic foot pain. *Id.*; Dkt.

7   No. 52 at 5. Mr. Brown filed 45 grievances through the DOC's Resolution Request Program. Dkt.

8   No. 89 at 5. And while in DOC custody, Mr. Brown had 84 primary encounters with medical staff,

9   was seen by medical specialists nine different times, and had multiple diagnostic imaging tests.

10  Dkt. No. 113 at 2–3; *see also* Dkt. No. 113-6.

11         He brings three claims. First, he alleges that Defendants were deliberately indifferent to his

12  serious medical needs in violation of the Eight Amendment. Dkt. No. 52 at 4–5. Second, he alleges

13  that Defendants treated him unequally in processing his medical grievances in violation of the

14  Equal Protection Clause of the Fourteenth Amendment. *Id.* at 6–7. And third, he alleges that

15  Defendants denied or neglected his medical grievance in violation of the Due Process Clause of

16  the Fourteenth Amendment. *Id.* at 7–8.

17         On April 28, 2025, the parties cross-moved for summary judgment. Dkt. Nos. 112, 120.

18  Judge Leupold issued an R&R recommending that the Court grant summary judgment in

19  Defendants' favor on all claims in the operative complaint, and that Mr. Brown's cross-motion be

20  denied. Dkt. No. 140. *Id.* at 48.[2] No party has filed objections to the R&R.

21

22  [1] Over the 17-month period leading up to his release from DOC custody in November 2022, Mr. Brown was housed in three DOC facilities: Washington Corrections Center ("WCC"), Monroe Correctional Center ("MCC"), and Airway Heights Corrections Center ("AHCC"). Dkt. No. 88-1 at 2–6.

23  [2] In the same order as the R&R on the dispositive motions, Judge Leupold also resolved several non-dispositive motions. *See* Dkt. No. 140 at 2–3, 10–17, 47. Based on the record and the applicable law, the Court finds that Judge

24  Leupold did not err in his rulings on these motions. *Id.* at 10–13 (denying Mr. Brown's eleventh-hour motion for leave

ORDER ADOPTING REPORT AND RECOMMENDATION - 2

## II.  DISCUSSION

**A.    Standard of Review**

The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). As the statute and rule suggest, the Court reviews findings and recommendations "*if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct."). To perform a de novo "review of findings and recommendations to which no one objects would . . . defeat the whole purpose of referring the [matter] to the magistrate judge." *Id.* at 1122. Rather, "when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72, Advisory Comm. Notes (1983) (citing *Campbell v. U.S. Dist. Ct.*, 501 F.2d 196, 206 (9th Cir. 1974)).

**B.    Defendants Jaci Michaelis and Don McIntyre**

Judge Leupold granted summary judgment in favor of Defendants Jaci Michaelis and Don McIntyre on all counts.

Michaelis worked for the DOC from June 2017 through November 2021 at Airway Heights Corrections Center. Dkt. No. 119 at 1. During the relevant period, she worked as a resolution

---

to amend his complaint); *id.* at 13–14 (granting Defendants' motion to strike Mr. Brown's supplemental response as procedurally improper, and noting that the supplemental response did not raise any subject matter that was not, "or could not have been, presented in his prior submissions"); *id.* at 15–16 (declining the parties' requests to strike certain material, but stating that the Court would only consider materials that meet the requirements of Federal Rule of Civil Procedure 56); *id.* at 17 (denying Mr. Brown's request for court-ordered mediation).

1    request specialist responding to grievances related to inmate care and Health Services. *Id.* She did

2    not provide direct care to Mr. Brown, but did review four of his grievances. *Id.* at 2.

3        McIntyre worked for the DOC in Health Services in various roles for 25 years. Dkt. No.

4    113 at 1. He was the Health Services Manager 2 at AHCC from September 2018 through March

5    of 2023. *Id.* His duties involved providing administrative supervision of medical staff and

6    responding to inmates' concerns related to medical care, including by reviewing and investigating

7    inmate claims made through the Resolution Request Program. *Id.* at 1–2. He responded to two of

8    Mr. Brown's grievances. *Id.* at 2.

9        1.    Deliberate Indifference (Count I)

10       In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff

11   must show "deliberate indifference" to his "serious medical needs." *Estelle v. Gamble*, 429 U.S.

12   97, 103–05 (1976). "This includes both an objective standard—that the deprivation was serious

13   enough to constitute cruel and unusual punishment—and a subjective standard—deliberate

14   indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quotation marks

15   omitted). "A determination of 'deliberate indifference' involves an examination of two elements:

16   the seriousness of the prisoner's medical need and the nature of the defendant's response to that

17   need." *Balla v. Idaho*, 29 F.4th 1019, 1026 (9th Cir. 2022) (quoting *McGuckin v. Smith*, 974 F.2d

18   1050, 1059 (9th Cir. 1992)); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)

19   (deliberate indifference requires "(a) a purposeful act or failure to respond to a prisoner's pain or

20   possible medical need and (b) harm caused by the indifference"). "A prison official is deliberately

21   indifferent under the subjective element of the test only if the official knows of and disregards an

22   excessive risk to inmate health and safety." *Id.* (quotation marks omitted). This requires more than

23   an ordinary lack of due care; the prison official "must both be aware of facts from which the

24

ORDER ADOPTING REPORT AND RECOMMENDATION - 4

1    inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

2    inference." *Id.* (quotation marks omitted).

3        As noted, Michaelis processed four of Mr. Brown's medical grievances (Nos. 21737124,

4    21738444, 21738445, 21741631) concerning kidney pain, diabetes, and other issues. Dkt. No. 119

5    at 2–3. She reviewed records, contacted providers, and ensured follow up care. Dkt. Nos. 119-1–

6    119-4. She also noted Mr. Brown's non-compliance with his medical regimen and provided

7    guidance on proper care request procedures. *See* Dkt. No. 119-2 at 8 (refusing insulin); Dkt. No.

8    119-3 at 3 (missed appointment, not taking prescribed medications); Dkt. No. 119-4 at 2 (Mr.

9    Brown stating that he "has a right to refuse this diabetic call outs" and "will not take insul[i]n[] as

10   long as [he is] forced to stay here at airway h[e]ights"). She rejected one grievance as a duplicate

11   request, pursuant to DOC policies. Dkt. No. 119-4 at 2.

12       McIntyre's role was limited to administrative oversight of medical staff, ensuring inmates

13   who filed emergency grievances were seen by appropriate medical providers, and investigating—

14   but not formally responding to—appeals of medical grievances. Dkt. No. 113 at 1. In that role, he

15   investigated one of Mr. Brown's grievances (No. 21737124). Dkt. No. 113 at 2. His investigation

16   into Mr. Brown's appeal concerning his access to health care revealed that he received over 20

17   medical visits, tests, and consultations over the preceding four months. Dkt. No. 113-1 at 13.

18   Separately, McIntyre arranged two medical assessments in response to a separate medical

19   grievance, which Mr. Brown self-described as an emergency (No. 22761919). Dkt. No. 113 at 2;

20   *see also* Dkt. Nos. 113-2, 113-3. He provided multiple written responses to Mr. Brown's

21   emergency medical grievance, indicating that Mr. Brown was seen by medical staff on five

22   separate dates following that grievance. Dkt. No. 113 at 2 (Mr. Brown was seen on July 3, 5, 7,

23   11, and 12); *see also* Dkt. No. 113-2 at 2 (noting same thing).

24

ORDER ADOPTING REPORT AND RECOMMENDATION - 5

1    Judge Leupold concluded that Mr. Brown's "Eighth Amendment deliberate indifference

2    claims against Defendants Michaelis and McIntyre fail as a matter of law because he has not

3    submitted or identified evidence capable of showing that either Defendant knowingly disregarded

4    a serious risk to his health." Dkt. No. 140 at 32. "Rather, the evidence reflects that, where involved,

5    both Defendants fulfilled their administrative duties and facilitated [Mr. Brown's] access to

6    medical care." *Id.* at 35.

7        Upon review of the record and relevant case law, the Court finds no clear error.

8        2.    Equal Protection (Count II)

9        The Equal Protection Clause of the Fourteenth Amendment requires the State to treat all

10    similarly situated people equally. *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). "The

11    central inquiry in an Equal Protection Clause claim is whether a government action was motivated

12    by a discriminatory purpose." *Ballou v. McElvain*, 29 F.4th 413, 426 (9th Cir. 2022). A

13    discriminatory purpose "implies more than intent as volition or intent as awareness of

14    consequences"—rather, "[i]t implies that the decision maker . . . selected or reaffirmed a particular

15    course of action at least in part because of, not merely in spite of, its adverse effects upon an

16    identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citation

17    modified). "Discriminatory intent may be proved by direct or indirect evidence," but beyond

18    proving discriminatory intent, "there is no specific test that an equal protection plaintiff is required

19    to meet." *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991).

20        Judge Leupold found that the record showed that Michaelis and McIntyre followed DOC

21    grievance policies, with no evidence of discriminatory intent. Dkt. No. 140 at 38. He also noted

22    that Mr. Brown did not submit evidence of similarly situated inmates being treated differently. *Id.*[3]

23    

24    [3] Although the Equal Protection Clause generally prohibits the unequal treatment of similarly situated people, *see City*

ORDER ADOPTING REPORT AND RECOMMENDATION - 6

He concluded that "no reasonable jury could find that Defendants Michaelis and McIntyre violated [Mr. Brown's] rights under the Equal Protection Clause" and summary judgment is thus warranted in their favor on Count II. *Id.*

Upon review of the record and relevant case law, the Court finds no clear error.

3. Due Process (Count III)

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972).

As Judge Leupold observed, there is no protected interest in grievance processing. Dkt. No. 140 at 40; *see also, e.g.*, *Harbridge v. Schwarzenegger*, 752 F. App'x 395, 398 (9th Cir. 2018) (no protected liberty interest in any particular grievance system). And even if there were, Mr. Brown was not denied adequate process. Dkt. No. 140 at 40 ("the evidence does not support his contention that he was denied a constitutionally sufficient review process"). The record shows that Michaelis rejected one duplicative grievance (No. 21741631) consistent with DOC policy, which Mr. Brown did not appeal. Dkt. No. 140 at 40; Dkt. No. 119-4 at 2; Dkt. No. 89-3 at 2 (grievance log). Additionally, the DOC "offered inmates additional procedural safeguards when their

---

*of Cleburne*, 473 U.S. at 439, Mr. Brown does not need to prove the existence of a similarly situated group that is being treated differently to show discriminatory intent. *Ballou*, 29 F.4th at 426 ("The existence of a comparator is not a prerequisite to stating a disparate treatment claim under the Fourteenth Amendment. To the contrary, comparator evidence in disparate treatment claims can, but need not, be used to support a finding of a discriminatory motive."). Here, Mr. Brown contended in a conclusory manner that he was being treated differently on account of his race, and Judge Leupold appropriately noted that he had not put forward any evidence that he had been treated differently than similarly situated individuals outside of his racial group—not that Mr. Brown needed to do so to survive summary judgment. Dkt. No. 140 at 37–38.

1  grievances were not accepted for review by affording the opportunity to appeal rejection

2  decisions." Dkt. No. 140 at 41 (citing Dkt. Nos. 89-1, 89-2, 89-3). Therefore, Judge Leupold

3  concluded that "no reasonable jury could find that Defendants Michaelis and McIntyre violated

4  [Mr. Brown's] rights under the Due Process Clause" and that summary judgment is thus warranted

5  in their favor on Count III. *Id.*

6      Upon review of the record and relevant case law, the Court finds no clear error.

7  **C.      The Supervisory Defendants**

8      The Supervisory Defendants in this case are individuals who held supervisory roles within

9  the DOC or its facilities during Mr. Brown's period of incarceration: James Key, Dean Mason,

10 Dan White, Robert Jackson, Cheryl Strange, and Jack Richardson. Dkt. No. 140 at 41.

11     "[V]icarious liability is inapplicable to *Bivens* and § 1983 suits," so Mr. Brown must

12 therefore establish "that each Government-official defendant, through the official's own individual

13 actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009);

14 *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) ("Vicarious

15 liability may not be imposed on a supervisor for the acts of lower officials in a § 1983 action"). A

16 prison official in a supervisory position may be held liable in a Section 1983 action only "if he or

17 she was personally involved in the constitutional deprivation or a sufficient causal connection

18 exists between the supervisor's unlawful conduct and the constitutional violation." *Lemire*, 726

19 F.3d at 1074–75 (citation modified).

20     Judge Leupold found that Mr. Brown provided no evidence that any Supervisory Defendant

21 personally participated in or knowingly acquiesced to inadequate medical care. Dkt. No. 140 at

22 42.

23     • **James Key** is the former Superintendent of AHCC. Dkt. No. 115 at 1. He oversaw

24        AHCC operations and did not provide individualized medical care. *Id.* To his

ORDER ADOPTING REPORT AND RECOMMENDATION - 8

knowledge, he had no involvement in Mr. Brown's medical grievances. *Id.* at 2.

- **Dan White** is the former Superintendent of MCC. Dkt. No. 114 at 1. He had no authority over Health Services at MCC, did not provide medical care to inmates, had no access to Mr. Brown's medical record, and was not involved in any of Mr. Brown's grievances. *Id.* at 1–2.

- **Dean Mason** is the former Superintendent at WCC. Dkt. No. 117 at 1. During his tenure, Brown was in custody for a short period at WCC in August 2022. *Id.*; Dkt. No. 88-1 at 3. He is not aware of any of Mr. Brown's complaints or grievances regarding WCC staff while he was at the prison in August of 2022. Dkt. No. 117 at 2.

- **Robert Jackson** is the Superintendent of Washington State Penitentiary ("WSP"). Dkt. No. 116 at 1. Mr. Brown was not housed at WSP during the relevant period, so Jackson had no direct involvement in the issues raised in this lawsuit. *Id.* at 2.

- **Cheryl Strange** is the former DOC Secretary during the relevant period. Dkt. No. 140 at 45.[4] She did not directly review any of Mr. Brown's grievances because none of them proceeded above Level II review. Dkt. No. 89-3 at 2–3. Even had one of his grievances reached Level III review, Ms. Strange would not have directly reviewed it; that role falls to the Deputy Secretary. Dkt. No. 89 at 4–5.[5]

- **Jack Richardson** is a Sergeant/Corrections Officer 3 at AHCC. Dkt. No. 118. He did not provide medical care or process grievances, nor was he aware of unconstitutional

---

[4] The Court takes judicial notice of Ms. Strange's former position as an undisputed matter of public record. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); *Governor Ferguson announces new Legislative Director, update on DSHS secretary* (May 21, 2025), https://governor.wa.gov/news/2025/governor-ferguson-announces-new-legislative-director-update-dshs-secretary (last visited on August 2, 2025).

[5] Mr. Brown argued that Ms. Strange was put on notice and failed to respond to his medical issues after he filed a complaint with the Office of the Corrections Ombuds. Judge Leupold concluded that there was no evidence in the record to support that Ms. Strange had been put on notice, and that Mr. Brown's "bare contention" otherwise was not enough to avoid summary judgment. Dkt. No. 140 at 45–46.

ORDER ADOPTING REPORT AND RECOMMENDATION - 9

medical treatment or care being provided to Mr. Brown while he was incarcerated at AHCC. *Id.* at 1.

Judge Leupold concluded that Mr. Brown presented "no genuine dispute of material fact as to whether any of the Supervisory Defendants personally participated in" or knowingly acquiesced to "conduct constituting deliberate indifference to a serious medical need (Count I), discriminatory treatment (Count II), or a procedural due process violation (Count III)." Dkt. No. 140 at 46. "Instead, [Mr. Brown] appears to sue each based solely on their supervisory positions within the DOC and DOC facilities, which is not a sufficient basis for imposing liability under § 1983." *Id.*

Upon review of the record and relevant case law, the Court finds no clear error.

**D.    DOC Defendant**

Finally, Judge Leupold concluded that the DOC is entitled summary judgement in its favor because it is not a proper defendant. Specifically, because the DOC "is an agency of the State of Washington," it "is not a 'person' capable of being sued under § 1983." *Id.* at 47. The Court agrees. *See Taylor v. Washington Dep't of Corr.*, No. 23-35046, 2024 WL 4262806, at *1 (9th Cir. Sept. 23, 2024) (Washington DOC is not a "person" for Section 1983 purposes).

### III.  CONCLUSION

For the reasons explained above, the Court ADOPTS Judge Leupold's Report and Recommendation. Dkt. No. 140. Summary judgment is granted in favor of Defendants and against Mr. Brown. The Clerk is directed to send copies of this Order to Plaintiff, counsel for Defendants, and to the Honorable Grady J. Leupold.

Dated this 4th day of August, 2025.

Lauren King
United States District Judge

ORDER ADOPTING REPORT AND RECOMMENDATION - 10